[Civ. No. 1270. Fourth Appellate District.—June 7, 1934.]

M. T. McELLIGOTT, as Executor, etc., Respondent, v. HERBERT R. FREELAND et al., Appellants.

Everts, Ewing, Wild & Everts, Dan F. Conway and L. N. Barber for Appellants.

Lucius Powers, Jr., and Conley, Conley & Conley for Respondent.

JENNINGS, J.—The defendants Herbert R. Freeland and the Metropolitan Casualty Insurance Company of New York appeal from a judgment of the trial court in favor of Lucius Powers, who was the original plaintiff in the action. Pending this appeal Lucius Powers died and M. T. Mc-Elligott, as executor of his last will and testament, was duly substituted in the place of said deceased as respondent in this appeal.

The amended complaint filed in the action sought the recovery of the sum of $10,116.67 which was alleged to have been paid by the plaintiff to the defendant H. R. Freeland as the purchase price of 2,020 shares of class A common capital stock of the Hollywood Dry Corporation. The complaint alleged that the plaintiff was induced to purchase the stock and to pay the above-mentioned amount therefor by reason of certain false and fraudulent representations respecting the value of the stock and the financial

condition of the aforesaid corporation which were made to him by the defendant Freeland and by the defendant George T. Hadley, who was alleged to have been Freeland's agent in the negotiations which culminated in the sale of the stock by Freeland and its purchase by the plaintiff. Recovery was sought from the defendant Metropolitan Casualty Insurance Company of New York as the surety of Freeland in an undertaking which was filed by him as a broker licensed by the state commissioner of corporations to engage in the business of buying and selling stocks and other corporate securities within the state of California. The judgment from which this appeal is taken provided that the plaintiff Lucius Powers should recover from the defendant Freeland the aforesaid sum of $10,166.67, together with interest thereon, and that said plaintiff should recover from the surety company the sum of $5,000, which was included as a part of the judgment against Freeland. Recovery of any amount was denied from the defendant George T. Hadley.

Because of a certain contention of appellants to which consideration will hereafter be given, it will be proper first to determine whether this action was one that was instituted for the purpose of accomplishing a rescission of the purchase of stock or whether it was an action that was brought for the purpose of recovering compensation for the damage occasioned to the plaintiff through the fraud which was alleged to have been practiced upon him by the defendant Freeland and his agent, Hadley.

 It is our opinion that the action was one for rescission. The amended complaint contained an appropriate allegation that the plaintiff upon discovery of the fraud had given to the defendant Freeland timely notice of his election to rescind the purchase, that he had offered to restore to Freeland the stock and everything else of value which he had received and had demanded that Freeland repay to him the sum of money which plaintiff had paid for the stock. The prayer of the complaint was for a judgment against the defendants for the exact amount which plaintiff had paid for the stock and "that the court decree that the contract for the purchase of said stock was duly and regularly rescinded, and that plaintiff Lucius Powers has not been, and is not now, a stockholder of the Hollywood Dry Corporation". The trial court made a finding that the plaintiff,

immediately upon discovery of the falsity of the representations which had been made to him, mailed to the defendant Freeland a letter in which plaintiff stated that he elected to rescind the contract for the purchase of the stock on the ground of fraud, offered to return the stock and a dividend thereon which plaintiff had received and demanded repayment of the sum of money paid to Freeland by the plaintiff, but that the letter thus mailed was not received by Freeland until after the commencement of the action. The judgment of the court was for the exact amount demanded by the prayer of the amended complaint. It seems clear, therefore, that the complaint was framed on the theory that the cause of action therein alleged was one for rescission. The above-mentioned finding indicates that the action was tried on the assumption that it was an action for rescission. The judgment which was rendered for the exact amount which was alleged to have been paid for the stock also indicates that the trial court tried the case on the theory that the action was one for rescission.

The trial court found that the defendant Freeland, both individually and through his employee, Hadley, made seven specific representations to the plaintiff relative to the stock and to the sale of said stock, that all of such representations were false, fraudulent and untrue, and were known to be such by Freeland, that they were made by Freeland with the intention that plaintiff should rely upon them, that plaintiff believed the representations and acted upon them to his detriment and that Freeland, at all times material to the cause of action alleged in the complaint, knew that plaintiff was acting under the belief that the false, fraudulent and untrue statements made to him by Freeland were true.

The seven representations which the court found were false and fraudulent may be epitomized as follows: (1) That the Hollywood Dry Corporation, immediately prior to August 20, 1929, and for many months prior thereto, had made large profits through the manufacture and sale of its products and that during the year 1929 the said corporation had made substantial profits from the operation of its business. (2) That the sale of class A common capital stock to plaintiff was authorized and directed by the corporation for the purpose of increasing the working capital of said cor-

poration and the proceeds derived from the sale of the stock would be used by the corporation to perfect its program of expansion and that all of the net proceeds derived from the sale of stock to plaintiff would go into the treasury of the corporation to be used for the expansion of the business of the corporation. (3) That the stock of the corporation had been placed on a permanent dividend basis, that a legally declared quarterly dividend would be paid to stockholders of record on January 10, 1930, and a dividend in the same amount would be paid quarterly thereafter and such dividends would permanently continue, that an extra dividend would soon be declared by the directors of the corporation in addition to the above-mentioned quarterly dividends. (4) That on October 30, 1929, the corporation had set aside as unappropriated surplus the sum of $137,644.77, after having appropriated for the payment of the quarterly dividend to be paid on January 10, 1930, the sum of $25,000, and that all of said surplus represented the earnings of the corporation from the operation of its business during the year 1929 up to October 30th of said year. (5) That the corporation was in an excellent and unimpeachable financial condition. (6) That the 2,020 shares of class A common capital stock which plaintiff was solicited to purchase had been legally issued and that said stock had a book value of $6.50 per share on October 30, 1929, and the said stock was constantly increasing in book value. (7) That Freeland, because of his relationship with the corporation, had special information and knowledge regarding the internal affairs of the corporation and additional confidential information relative to the future plans of the corporation with respect to the sale of its products and the promotion of its affairs to the end that within a few months the said stock would have a market value at least two times the price for which it was offered for sale to the plaintiff.

The above-described findings are attacked on the familiar ground that they are lacking in evidentiary support. Those representations which relate to the book value of the stock at the time the contract of sale was made and to its future value and with respect to the business of the corporation at the time of the negotiations for the sale of stock and its prospect for enjoying good business in the future and with respect to the declaration of future dividends are said to

be mere matters of opinion and not statements of fact. The falsity of the representations with respect to the financial condition of the corporation and the existence of an unappropriated surplus of $137,644.77 on October 30, 1929, is said to depend on the admission of certain evidence erroneously received by the trial court. The court's finding that the various representations were made by Freeland with the knowledge that they were false is particularly attacked on the ground that the record contains no evidence to support it.

In entering upon a consideration of the above-specified contentions it may be conceded that a statement of mere opinion, although false, may not form the basis of an action by which the recovery of damages or the remedy of rescission on the ground of fraud is sought. However, whether a statement amounts merely to an expression of opinion or whether it shall be deemed to be a positive declaration of fact depends, in the final analysis, on the circumstances of the case and is a question for the trial court to determine (*French* v. *Freeman*, 191 Cal. 579, 585 [217 Pac. 515] ; *Stockton* v. *Hind*, 51 Cal. App. 131, 136 [196 Pac. 122]). It is evident that the trial court determined that the above-described representations which were found to have been made by Freeland and his employee were statements of fact. Unless, therefore, the record shows that the whole circumstantial background of the case is such that we must declare that the representations of Freeland and his employee were not statements of fact, but were mere expressions of opinion, we are not justified in disturbing those findings of the trial court which are obviously based on the assumption that the representations were positive statements of fact. For a proper determination of this problem some consideration of the circumstances which surrounded the making of the various representations as they are disclosed by the record is required.

The record shows that evidence which established the following facts was produced during the trial: Freeland began his negotiations for the sale of stock with the plaintiff, Lucius Powers, during the month of April, 1929. At this time he stated that he considered that the stock was a very high-grade stock and that the company was going to make

a lot of money. He said that the company was making money "right from the start" and would require additional funds for the purpose of expanding its business. He stated that the additional money required for expansion purposes would be derived from the sale of stock. On a number of occasions during the summer and autumn of 1929 either Freeland or his agent Hadley talked with plaintiff regarding the financial condition of the Hollywood Dry Corporation and showed him financial statements which were put out by the corporation which indicated that the corporation was enjoying good business and was making money. One of these statements showed that the Hollywood Dry Corporation had set aside the sum of $162,000 after appropriating the sum of $25,000 for the purpose of paying a dividend of twelve and one-half cents per share which would be declared in the month of January, 1930. On one occasion Hadley stated to the plaintiff that the book value of the stock was $6.50 per share and that its market value was considerably greater. On another occasion Freeland made the statement that the directors of the corporation had put the company on a permanent dividend basis and that quarterly dividends would be declared. Hadley told the plaintiff that the corporation was making money so fast that it was contemplated that a special dividend would be declared. In numerous letters and telegrams which were addressed to the plaintiff by Freeland during the months of October, November and December, 1929, the writer advised plaintiff that he had reserved 4,040 shares of class A common stock of the Hollywood Dry Corporation and besought plaintiff to purchase all or one-half of the allotment at a price of $4.95 per share. In a letter sent by Freeland to plaintiff on December 27, 1929, the writer stated that he had learned that practically all of the class "A" common stock, which was held for pool purposes, had been taken up and that the date set for closing the pool was December 31, 1929, after which date the minimum ruling price of the pooled issue would be $10 per share. In two letters that were sent by Freeland to plaintiff during the above-mentioned period the writer referred to confidential information "regarding our proposition" which he had and which he desired to communicate to the plaintiff. During all of the time when the nego-

tiations for the sale of stock to the plaintiff were under way Freeland occupied an office in the Hollywood Dry Corporation building in the city of Los Angeles for which he paid no rent and his efforts during this period were entirely devoted to the sale of stock of the Hollywood Dry Corporation. As a result of these negotiations plaintiff, on December 28, 1929, agreed to purchase 2,020 shares of class "A" common stock of the corporation at the rate of $4.95 per share and in payment therefor he gave his note to Freeland for the sum of $10,000. Plaintiff's note was payable sixty days after the date of its execution on January 4, 1930, and bore interest at the rate of seven per cent per annum. It was paid on or about its due date. A certificate for 2,020 shares of class "A" common stock of the Hollywood Dry Corporation was duly delivered to plaintiff by Freeland. The certificate contained on its reverse side a statement that as part of the consideration for the stock represented by the certificate, it was agreed that the stock would not be offered for sale and was not transferable on or before January 4, 1931, except upon the expressed permission of Consolidated Investment Corporation. It developed that the stock which plaintiff purchased was owned either by the Consolidated Investment Corporation or by Freeland himself and that the money which plaintiff paid for the stock went to the last-named corporation and not into the treasury of the Hollywood Dry Corporation. It also developed that Freeland was a stock broker employed not by the Hollywood Dry Corporation but by the Consolidated Investment Corporation. On October 15, 1929, the Hollywood Dry Corporation declared a dividend at the rate of twelve and one-half cents per share on its class "A" common stock, payable on January 15, 1930, and plaintiff received therefrom the sum of $252.50. In the month of May, 1930, the Hollywood Dry Corporation became insolvent.

It is our opinion that, taking into consideration the above-mentioned facts and circumstances, we are not warranted in sustaining the contention of appellants that all of the various representations which were made by appellant Freeland and by his employee were purely opinion statements. Undoubtedly, it must be conceded that among them are some which may properly be so characterized. General state-

ments respecting the success of the company, that it was making money and prospering have the sound of seller's talk. The more specific declaration that the company had derived profits from its business amounting to a definite sum of money during a specified period and had set aside a surplus of a certain sum has the sound of a positive statement of fact very material to the financial condition of the company and the value of its stock. The statement that the stock had a book value of a definite amount per share and a market value which was in excess of its book value was under the circumstances a statement not of opinion but of fact. These definite statements respecting the value of the stock and the amount of surplus which remained after the requirements for the dividend which was to be paid in January, 1930, are to be considered in the light of Freeland's subtle suggestion that he was a part of the organization of the corporation. When he wrote Lucius Powers on October 17, 1929, to urge that, if Powers felt he did not have available the funds required for the purchase of the full allotment of 4,040 shares, he should in any event subscribe for one-half of the allotment, he called attention to the fact that a man well known in the community where Powers resided had been elected to the board of directors of the Hollywood Dry Corporation and concluded the letter with the following language: "Anticipating the pleasure of having you join *us* (italics ours) in this business, which is making very rapid gains." We think that the natural effect of the above-quoted language was to create upon the mind of the person to whom the statement was made an impression that the writer was a part of the organization of the corporation and therefore in a position to speak intelligently and knowingly of its affairs. Again, when Freeland on two different occasions wrote Powers that he was in possession of confidential information which he desired to transmit to Powers the same suggestion that Freeland was in a position to know and did know the inner workings of the corporation was subtly communicated to Powers. These very suggestions, whose effect was to create a belief that Freeland was closely connected with the Hollywood Dry Corporation when as a matter of fact he had no such close connection, were themselves fraudulent under the definition

of actual fraud as contained in subdivision 1 of section 1572 of the Civil Code. The positive assertions that the Hollywood Dry Corporation had made a profit of a definite amount in the first six months of the year 1929 and that the stock had a book value of $6.50 per share and a market value larger than its book value were not warranted by the information which Freeland possessed if his reiterated statements appearing in his testimony that he depended entirely on the financial statements issued by the corporation are to be believed. They were false statements and were therefore fraudulent even though Freeland himself believed them (subd. 2, sec. 1572, Civ. Code). Finally, the statement that the corporation would derive the funds which it required for the expansion of its business from additional sales of stock, the natural inference of which was that the purchase price to be paid by Powers would go into the treasury of the corporation to be used in its expansion program, was clearly a positive statement of a very material fact. It was a false statement and it was undoubtedly known to be false by Freeland, who knew that he was proposing to sell to Powers stock that was not the property of the Hollywood Dry Corporation but was the property either of himself or of the Consolidated Investment Corporation and that the money which Powers would pay therefor would go not to the Hollywood Dry Corporation but to the Consolidated Investment Corporation. ■ No citation of authorities is required in support of the familiar principle that, if any one of the various misrepresentations which the trial court has found were made by the appellant Freeland constituted a statement of fact as opposed to an expression of opinion, a reviewing court is not justified in reversing the judgment although the trial court erroneously found that other statements which were properly expressions of opinion were representations of fact.

■ Appellants further contend that, if it be assumed that the various representations specified in the findings were made and that they were false statements of fact, nevertheless the evidence wholly fails to support the trial court's finding that they were made knowingly. In other words, it is contended that proof of scienter was wholly lacking. It is a primary rule of the law of fraud that to

warrant recovery for fraudulent representations it must appear that the party sought to be charged knew that the statements which he made were false. Throughout the testimony of the appellant Freeland we find him taking the position that he was merely a stock salesman who had no knowledge of the internal affairs of the Hollywood Dry Corporation and who did not pretend to have such knowledge. This position is supported to some extent by the testimony of Powers, who admitted that Freeland exhibited to him financial statements prepared and put out by the officers of the Hollywood Dry Corporation. However, among the various representations which were attributed to Freeland there was at least one that did not depend on any financial statement or literature published by the Hollywood Dry Corporation. This was the representation that the Hollywood Dry Corporation would secure the funds for its much-needed expansion program from the sale of additional stock and that the money derived from such sales would go into the treasury of the corporation and would be used for the expansion of its business. Obviously appellant Freeland knew that the money which Powers paid him for the 2,020 shares of stock would not go into the treasury of the Hollywood Dry Corporation. Furthermore, it is to be remembered that Freeland admitted that, during the whole of the period when he was endeavoring to sell stock to Powers, he occupied an office rent free in the building of the Hollywood Dry Corporation in Los Angeles. This was a circumstance which the trial court was entitled to consider and which may well have moved the court to disbelieve his statement that he did not know that his representations respecting the success of the company and of the profits it had made and the value of its stock were false statements.

Appellants strenuously maintain that the trial court erroneously admitted certain evidence which was wholly incompetent and which was highly prejudicial to them. During the course of the trial evidence was produced which showed that the Hollywood Dry Corporation listed among its assets a certain unsecured promissory note executed by an eastern corporation known as the Hollywood Dry Eastern Corporation. The evidence showed that this note was given to the California corporation as consideration for the exten-

sion by the California corporation of the time within which the Eastern corporation should perform a contract which it had made with the California corporation whereby the Eastern corporation agreed to take and to sell a very large quantity of the products manufactured by the California corporation. The listing of this note as an asset of the California corporation and the unusual method which the officers and directors of the Hollywood Dry Corporation employed with reference to it was a most prominent feature of this action. It appeared that each month during the year 1929 a portion of the amount for which the note was given was set up in the books of the California corporation as profit earned during that month. In each one of many months the amount thus taken was $20,000. This peculiar treatment of the note was reflected quite naturally in the financial statements published by the Hollywood Dry Corporation and it was thereby enabled to show a consistent profit in its business. It quite satisfactorily appeared that except for the above-described treatment of the note of the Eastern corporation the Hollywood Dry Corporation would not only have been unable to show that it was operating its business at a profit but that it was actually losing money. The unhappy conclusion of the story of this note was that it was never paid so that the paper profits of the Hollywood Dry Corporation which depended on it vanished into the exceedingly rare atmosphere from which it was created. The treatment of the note by the Hollywood Dry Corporation became an exceedingly controversial subject during the trial of this action. It was defended as good business practice by appellants and vehemently attacked by respondent's testate. The latter produced a certified public accountant who testified that he had been employed by the board of directors of the Hollywood Dry Corporation to make an audit of the financial condition of that corporation at some time between December 1, 1929, and February 1, 1930, that the audit was made under his supervision and direction, although he did not perform all of the detail work required thereby, that the books of the corporation, although in good condition from the purely clerical viewpoint, did not reflect the true condition of the corporation, that after completing the audit he prepared a financial statement

which showed the condition of the corporation as he found it. The attention of the witness was particularly directed to the note of the Hollywood Dry Eastern Corporation for $200,000 and he was interrogated in regard to it. During the course of the examination the following inquiry was propounded to the witness by counsel for respondent: "Did you investigate the financial responsibility of the Hollywood Dry Eastern Corporation to know whether or not that note was worth anything or could be collected?" The trial court, over the objections of appellants, permitted the question to be answered. The following response was given to the question: "Yes sir. We made an investigation through our New York office and ascertained at that time that the Hollywood Dry Eastern Corporation was, in effect, nothing but a shell, the company having no assets and no liabilities other than this note, which was a liability; that the company had been formed and the directors chosen, but it had never operated or acquired any assets." It was objected that the answer showed that the information regarding the condition of the Eastern corporation was rank hearsay and that the answer was a statement of plain facts and not of the opinion of the witness. The trial court allowed the answer to stand with the express limitation that it was admitted for the purpose of showing what investigation the accountant had made. The witness later testified that it was his opinion that the note had no value at any time.

The principal complaint which is here raised to the admission of the above-mentioned evidence is that it was pure hearsay testimony not within any exception to the hearsay rule and that it formed the basis for the opinion of the witness that the note had no value. It must, we think, be conceded that, as a general rule, an expert witness is not permitted to give an opinion which is based upon information gained from the statements of other persons outside the courtroom for the obvious reason that the opinion of the witness thus depends entirely upon purely hearsay declarations (Jones on Evidence, sec. 376; *Nelson* v. *Painless Parker*, 104 Cal. App. 770, 778 [286 Pac. 1078]). However, it is established that a witness who is called to testify regarding the value of property should, so far as is practicable, detail the facts upon which his conclusion or judgment is based even though the facts upon which he

relics would be incompetent to affect value in the particular case and even though the facts which form the basis of his conclusion may have been derived from inquiries made of others or from correspondence (22 C. J., p. 575). This principle is exemplified in cases where an expert is permitted to give an opinion as to value which is based entirely on knowledge gained from inadmissible sources (*Betts* v. *Southern California etc. Exchange*, 144 Cal. 402, 409 [77 Pac. 993]; *Hammond L. Co.* v. *County of Los Angeles*, 104 Cal. App. 235, 248 [285 Pac. 896]; *Glantz* v. *Freedman*, 100 Cal. App. 611, 614 [280 Pac. 704]). As was remarked by Holmes, C. J., in *National Bank* v. *New Bedford*, 175 Mass. 257 [56 N. E. 288]: "An expert may testify to value, although his knowledge of details is derived chiefly from inadmissible sources, because he gives the sanction of his general experience." ▪ It is to be remembered that the testimony of the witness wherein he related the result of the investigation which he had made was given in response to a question which was preliminary to the matter upon which he was called to give his opinion. It is obvious that this witness was called to testify as to the value of the note for $200,000 executed by the Hollywood Dry Eastern Corporation and carried on the books of the Hollywood Dry Corporation as an asset having a value equivalent to the face of the note. The preliminary statement of the witness wherein he related what he had discovered by inquiry in New York as to the structure and financial condition of the Eastern corporation was received by the trial court with the limitation that it was admitted only for the purpose of showing what investigation the witness had made. It is our opinion that we are not justified in declaring that the trial court committed reversible error in receiving the evidence with the express limitation suggested by the court as herein noted. ▪ It is also objected that the trial court erred in permitting the witness to testify that the note was valueless at any time. It is our opinion that the trial court did not err in so doing. It appeared that the witness was a certified accountant who had been employed to make an audit of the books of the Hollywood Dry Corporation and that he had directed and supervised the making of such an audit. We think that, under the circumstances disclosed by the record, the value of the note was a matter material

to the issues of the action, that it was a subject upon which a properly qualified expert witness might be called upon to give an opinion and that the witness was shown to possess the necessary qualifications for the expression of an opinion.

Appellants make the further point that the trial court found that the notice by which Lucius Powers communicated to Freeland his election to rescind the contract of purchase and to return to Freeland the stock certificate and everything of value which he had received in connection with the purchase of stock was sent to Freeland by mail and that it was received by the addressee after this action was commenced. It is urged that this finding of fact, which is amply supported by the evidence, conclusively shows that the action was prematurely brought and that the judgment permitting Powers to recover the money which he had paid for the stock is incorrect, particularly since it does not require respondent to surrender the stock certificate and the dividend of $252.50 admittedly received by Powers during his lifetime.

■ We have heretofore indicated our opinion that this action was one that was brought for the purpose of accomplishing the rescission of the transaction whereby Powers purchased from Freeland 2,020 shares of stock of the Hollywood Dry Corporation. We recognize the general rule which is applicable to one who desires to rescind a contract. It is fully stated in section 1691 of the Civil Code. We understand that a person desiring to rescind must do so promptly upon discovery of the facts which he claims entitle him to rescind and that he must restore or offer to restore to the other party everything of value which he has received under the contract. It must be conceded that notice of rescission and offer of restoration is a condition precedent to the bringing of an action to accomplish rescission save in exceptional cases, where, by reason of the circumstances, restoration or offer of restoration is not essential (*California etc. Co.* v. *Schiappa-Pietra*, 151 Cal. 732, 739 [91 Pac. 593]). It is our opinion that this is one of the exceptional cases. The trial court found that the stock which Powers purchased from Freeland "did not at any time or at all have a book value of $6.50 per share but that said stock was in truth and in fact wholly worth-

less''. We think this finding was supported by the evidence. Since, therefore, the court properly found that the stock which plaintiff received had no value it necessarily follows that appellant Freeland could not have been injured by the failure of Powers to restore the stock (*Kelley* v. *Owens*, 120 Cal. 502 [47 Pac. 369, 52 Pac. 797]). Appellants point to the fact that the trial court's finding relative to the failure of Powers to give notice of rescission and offer of restoration until after this action was begun contains no reference to the value of the stock. This seems to us to be unimportant. The court had made a specific finding that the stock was always worthless and we think that it was not required that the court make a specific finding that offer of restoration prior to suit was unnecessary because of the worthlessness of the stock. With respect to the failure of the trial court to provide in its judgment that respondent should return the dividend of $252.50 received by Lucius Powers it is sufficient to observe that evidence was submitted to the trial court which tended to show that this dividend was illegally declared. This being true, we may assume in support of the judgment that the trial court concluded that respondent might be compelled by the creditors of the Hollywood Dry Corporation to return this dividend irregularly and illegally declared.

The final contention of appellants on this appeal is that the judgment against the surety company on Freeland's bond permitted recovery from the surety company for the sum of $5,000, the amount of the bond "with interest thereon from March 16, 1930, to the entry of judgment". It is urged that the provision of the judgment permitting the recovery of interest on the amount of the bond prior to the entry of judgment is erroneous since it exceeds by the amount of interest allowed the full amount for which the surety became obligated. A most casual reading of the judgment demonstrates that appellants are entirely mistaken in this contention and that the judgment against the appellant Metropolitan Casualty Company of New York does not include the allowance of any interest on the amount of the bond prior to the entry of judgment.

For the reasons stated herein the judgment is affirmed.

Barnard, P. J., and Marks, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on July 5, 1934, and an application by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on August 6, 1934.