[Civ. No. 13321. First Dist., Div. Two. Aug. 26, 1947.]

Estate of SAUL N. ADES, Deceased. MARY ADES, Appellant, v. SAMUEL ADES, as Executor, etc., Respondent.

336

Marcel E. Cerf, Robinson & Leland for Appellant.

Gavin McNab, Schmulowitz, Aikins, Wyman & Sommer, Nat Schmulowitz, Peter S. Sommer, Sidney Rhein and Sidney DeGoff for Respondent.

NOURSE, P. J.—This is an appeal by Mary Ades, widow of Saul N. Ades, from a decree of settlement of second and final account and final distribution of the estate of her deceased husband holding that there was no community property of appellant and decedent, and overruling the objection of appellant who seeks to share in the distribution of part of the estate as such community property, and also from an order granting, for a limited time only, her petition to set aside probate homestead.

Saul N. Ades died testate on July 12, 1943, leaving assets appraised in excess of $200,000. He was survived by Sultana Ades, his first wife, whom he married in 1910, and from whom he was divorced in 1934, by three children, the issue of this prior marriage, and by appellant whom he married on February 23, 1939. By his last will executed on January 21, 1942, he left the bulk of his estate to his three children. A cash legacy of $5,500 to appellant was conditioned on her waiving her rights to her share of the community property, homestead rights and widow's allowance, the will reciting that this bequest was in excess of any community property interest appellant might have. Appellant elected not to take this legacy but to seek widow's family allowance, homestead rights and a share in alleged community property.

Appellant specifies some minor errors allegedly committed as to admittance of evidence which will be noticed later but her chief contentions are two. The first is that during her marriage with decedent there was an important increase in

his net worth which increase is presumed to be community property, that this presumption was not overcome by any evidence presented by respondent and that therefore it was error for the trial court to hold that all of the assets of the estate were the separate assets of decedent, except for rights of his first wife Sultana, recognized in another suit.

The law with respect to this point is well stated in *Estate of Trelut*, 26 Cal.App.2d 717, 723 [80 P.2d 147] as follows:

"The sufficiency of the evidence is generally a matter for the trial court or jury, and the findings or verdict will not be lightly set aside. Following the general rule, a finding of a trial court that property is either separate or community in character is binding and conclusive upon the appellate court, if it is supported by sufficient evidence, or if it is based on conflicting evidence or upon evidence that is subject to different inferences. (3 Cal.Jur.Supp. 573.) Further, a finding against a presumption is binding upon the appellate court (*Estate of Cronvall*, 220 Cal. 503 [31 P.2d 372]), unless the evidence to rebut it is so weak and improbable that the finding is without substantial support. (*Olson* v. *Cornwell*, 134 Cal.App. 419 [25 P.2d 879].) It is finally in each case a question of fact for the court or jury to determine whether the evidence is sufficient to overcome the presumption. The rule has been expressed as follows: 'If, upon an analysis of evidence of substantial character, in the light of established rules, the mind of the trial judge, exercising reasonable discrimination, is satisfied that the naked presumption in favor of community property has been outweighed, then the findings of the trial court must prevail.' (3 Cal.Jur.Supp. 575, citing *Estate of Tompkins*, 123 Cal.App. 670 [11 P.2d 886].)''

In *Estate of Duncan*, 9 Cal.2d 207, 217 [70 P.2d 174], it is said with respect to a point of this same character: "Upon this appeal, therefore, contestant is confronted with the added task of establishing the fact that there is no real conflict in the evidence and an entire failure of any substantial evidence to support the conclusion of the trial court, for, of course, the question of the sufficiency of the evidence is primarily a question for the trial court to determine, and if there be a conflict of the evidence, the finding of the lower court is not open to review on appeal."

Appellant has not sustained this additional burden. The record contains substantial evidence adduced by respon-

dent which can reasonably be held to have overcome the presumption in favor of community property, assuming but not deciding that this presumption applies to any increase during marriage in the net worth, when the source of such increase has not been shown. Compare 3 California Jurisprudence, Ten-Year Supplement, pages 554, 555.

Respondent offered in evidence a Report of Audit by the witness Felix, accountant of decedent, containing over and above a comparative balance sheet of decedent as per February 23, 1939, and July 12, 1943, about which later more will be said, a statement of his earnings during the years 1939 to 1943. No objection was made to the introduction of this statement of earnings. It shows a total net income of $35,960.79 including both community and separate income, during the four and one-half years of the marriage. Moreover, there were received in evidence without objection copies of the federal income tax returns both of decedent and appellant during the period of the marriage. Each of the spouses reported one-half of the community income. For the four years from the marriage until the end of the year 1942 appellant reported as her half of the community income in 1939, $2,638.89; in 1940, $2,739; in 1941, $4,325.06 and in 1942, $2,808.33 or a total of $12,511.28. With respect to the year 1943, until the death of Saul N. Ades, no return of appellant was introduced but the return made for decedent showed half of the community income to have been $1,373.23. On the basis of these returns the total community income during marriage amounted to $27,767, or an average of little over $6,000 a year. With respect to the community expenses, testimony was introduced given by appellant earlier in these proceedings in connection with her family allowance—she prayed for an amount of $2,500 per month—stating her husband's large expenses for dwelling, entertaining and traveling, which "used to cost him more than $1200 a month." She also mentions expenditure for many clothes, servants, maid, chauffeur, nurse and gifts.

It is presumed that the expenses of the family are paid from community earnings. (*Huber* v. *Huber*, 27 Cal.2d 784, 792 [167 P.2d 708] and cases cited there.) From the above evidence an inference could fairly be drawn that during appellant's marriage the living expenses must at least have equaled the total of the community income, in which case there could be no possibility of any accumulation of community property. Appellant introduced some evidence

as to some minor sources of business income of decedent allegedly not comprised in the above statement of earnings and income tax returns and of some alleged conversations of decedent in which he is said to have mentioned much higher amounts for his income in the year 1941 than are contained in these exhibits. Clearly, such evidence only created a conflict resolved by implication against appellant in the trial court.

Appellant bases her argument on a criticism of the comparative balance sheets at the time of the second marriage and of the death of decedent, trying to ignore respondent's evidence as to community income during marriage compared to living expenses. In this attempt she cannot succeed. ▆ Evidence that there was no excess of community income over living expenses is as effective to prove that all assets of the estate are separate property as a specific showing from which separate source each asset flowed. (*Van Camp* v. *Van Camp*, 53 Cal.App. 17, 26, 27 [199 P. 885], and see the application of the same method in *Estate of Tompkins*, 123 Cal. App. 670 [11 P.2d 886].) ▆ There is some truth in appellant's contention that the increase of only $2,000 in net worth during marriage shown by the comparative balance sheet offered by respondent is not decisive as to possible accumulation of community property. The balance sheet as per the date of death does not contain the value of certain life insurance policies amounting to approximately $15,000 which decedent retained until his death, whereas a value of $13,500 of such policies was shown in the initial balance sheet. Neither does the balance sheet as per the date of death show two joint bank accounts which decedent maintained with one or more of his children amounting together to more than $28,500 contributed solely by decedent. Although the omission of these items may technically be correct as they did not form part of the estate but at death became the property of the beneficiaries and survivors, they must be considered with regard to the extent of the accumulation during marriage. It must also be conceded that the sources of these important increases not contained in the comparative balance sheet are not specifically clarified by the evidence. The explanation of the accountant Felix which mentions over and above increase in value of separate property contained in the balance sheets "Inventory and the moneys accumulated before marriage that were not disclosed until after death" does not seem very clear and specific. Nevertheless, it cannot be said that the finding that

there was no community property of decedent and appellant is not supported by the evidence; not only is the evidence as to the depletion of the community income by the living expenses sufficient to show that the increase must necessarily have originated from some other source than accumulation of community property, but moreover there is competent evidence which tends to show that decedent was in the habit of secreting important amounts of money in safe deposit boxes and strongboxes. Appellant's witness Max Jackson testified that in the year 1942, he saw an amount of money in bills of thousand and five hundred dollars in a strongbox of decedent and that decedent told him that nobody knew about it. Appellant herself estimated the amount kept by decedent in a strongbox at the time of his death at close to a hundred thousand. Albert N. Ades, brother of decedent, testified that from January, 1936, until July, 1938, he kept $50,400 belonging to decedent in a safe deposit box in the witness's name at the Canadian Bank of Commerce in San Francisco. In March, 1942, Sam Ades, son of decedent, visiting decedent's safe deposit box at that bank at his father's request, found more than $17,000 in the box. Such evidence supports the findings of the lower court in that it shows that the source from which the unexplained increase came may very well have consisted of hidden personal assets of decedent, disclosed only after his death.

The same reasoning applies to other objections directed by appellant against the comparative balance sheet of accountant Felix, of which the principal is the following: The initial balance, as per February 23, 1939, contains an item ''Cash in Safe Deposit Box $50,400'' which item admittedly was not based on any book entry or admissible record but only on a hearsay declaration of Albert N. Ades as to the presence of that amount in his safe deposit box in the Canadian Bank of Commerce in the first half of the year 1938. It may be conceded that under these circumstances the inclusion of this item in the balance sheet has no probative significance and also that the testimony of Albert N. Ades as to presence of $50,400 in that safe deposit box in July, 1938, and of Sam Ades as to the presence of $17,000 in such a box in March, 1942, cannot in itself support the conclusion that $50,400 was present in a box on February 23, 1939. However, the presence of this specific amount in a safe deposit box at the time of decedent's second marriage is no essential part of respondent's case and on the basis of the evidence related above, the court could hold that there were

no sources available for community assets, and that insofar as the original separate assets actually proved and their increase during marriage were insufficient to explain the assets found at death the source must necessarily have consisted of undisclosed separate assets, probably hidden in safe deposit boxes or strongboxes.

Appellant argues that respondent is bound by his contentions based on the Felix report and that therefore other reasonings inconsistent with the Felix report, which report shows only an increase of $2,000 in net assets during marriage, are not available. This is not so. The report is purely evidentiary in character and the conclusiveness of evidence on the party who introduces it does not go to the extent of requiring the court to accept it as true if there is other conflicting evidence. (*Bellus* v. *Peters*, 165 Cal. 112, 119 [130 P. 1186]; *Worthington* v. *Peoples State Bank*, 106 Cal.App. 238, 241 [288 P. 1086]; 32 C.J.S. 1106.)

We conclude as to the first point that the finding of the trial court that there was no community property of appellant and decedent is based on sufficient though conflicting evidence and is binding on this court.

Appellant's second major contention, that it was error to set aside the probate homestead for a limited time only, as the property in question was bought during marriage and was presumed to be community property, must fail on the same grounds as her first contention. If the trial court's finding that there was no community property whatever was supported by evidence that there was no excess of community income over family expenses, then that same evidence supports the finding that the parcel of real property in question must have been acquired as separate property of decedent. Such property the court can set apart only for a limited period. Section 661, Probate Code.

Appellant's specifications of error as to admittance of evidence are without merit. Appellant contends that it was error to admit the Felix report over appellant's objection that one item "Cash in Safe Deposit Box $50,400" was not based on any admissible record. However, at the trial, appellant declared expressly that the report might go in with the exception of that one item and the court then stated: "You can't exclude the whole thing. We are not going to accept that he had $50,000 in every box he told somebody else he did. There are lots of other ways of proving it. I will allow it." Our

understanding of this somewhat informal ruling is that the one item objected to was excluded as evidence, in accordance with appellant's objection. Even if the item were improperly admitted in evidence we would not consider this error prejudicial to appellant as the evidence that there was no excess of community income over family expenses sufficiently supports the findings independent of the allegedly improperly admitted item. (*Roy* v. *Salisbury*, 21 Cal.2d 176, 187 [130 P.2d 706]; *Frazure* v. *Fitzpatrick*, 21 Cal.2d 851, 858 [136 P.2d 566].)

 Appellant complains that testimony as to decedent's assets in 1922, was erroneously admitted over her objection, this evidence being irrelevant and immaterial. The relevancy or remoteness of evidence offered is in the first place within the discretion of the trial court. Section 1868, Code of Civil Procedure; 10 California Jurisprudence, page 806. "Unless it can be seen that the evidence is without any weight whatever in determining the issue the action of the court in receiving it will not be reversed.

"The tendency of modern decisions is to admit any evidence which may have a tendency to illustrate or throw any light on the transaction in controversy, or give any weight in determining the issue, leaving the strength of such tendency or the amount of such weight to be determined by the jury; and in determining the relevancy of evidence that may be offered upon an issue of fact much depends upon the nature of the issue to sustain which or against which it is offered, and a wide discretion is left to the trial judge in determining whether it is admissible or not." (*Moody* v. *Peirano*, 4 Cal.App. 411, 418 [88 P. 380].) This principle should apply *a fortiori* where the court sits without a jury. In this case appellant had raised the point whether decedent's income before his second marriage had been sufficient to permit the accumulations required to sustain respondent's contentions. We cannot say that his accumulations until 1922 cannot throw any light whatever on the question and that admittance of evidence as to this point was an abuse of discretion.

 Finally, appellant contends that it was error to allow to be read into evidence over her objection the statement made by decedent in his will that the legacy of $5,500 bequeathed to appellant was in excess of her community interest. Although such declaration is not competent against appellant and must be disregarded (*Estate of McCarthy*, 127 Cal.App. 80, 86 [15 P.2d 223], and cases there cited) the reading can in

no way have been prejudicial to appellant. The will was at any rate part of the evidence before the court with respect to the decree of distribution and as stated above the findings of the court were sufficiently supported independently of the attacked statement in the will.

In view of our conclusions as to the major issues it is unnecessary to consider the other points raised by the parties on this appeal.

The decree and order are affirmed.

Goodell, J., and Dooling, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied October 23, 1947.