[Civ. No. 24174. Second Dist., Div. Two. Nov. 7, 1960.]

ROWENA MASON, Appellant, v. HARVEY J. MASON, Respondent.

Cooper & Nelsen, Ned R. Nelsen and John G. Messer for Appellant.

Edward M. Raskin and Paul P. Selvin for Respondent.

FOX, P. J.—Plaintiff wife appeals from those portions of an interlocutory judgment of divorce decreeing: (1) that there is no community property; and (2) that the court retains no jurisdiction to modify the decree with respect to alimony payments.

The parties were married on September 2, 1953, and separated September 4, 1958, a period of five years and two days. Summons and complaint were personally served on defendant within the city of Los Angeles. Defendant failed to answer and his default was entered on October 22, 1958. The hearing of the matter involved lengthy proceedings culminating on May 29, 1959, when the court took the case under submission. Defendant made no appearance in person or by counsel.

Basic to this appeal is plaintiff's contention that the existence of community assets was established by application of the presumption stated in section 164 of the Civil Code, and that the presumption was not rebutted by competent evidence. The record fully supports this contention and the finding that there is no community property is clearly in error.

Section 164 of the Civil Code provides in the portions here relevant, that all property, except separate property as defined in Civil Code, sections 162 and 163, acquired by either spouse during the marriage is community property. ▊▊ The presumption thus created is disputable, and as such is the weakest and least satisfactory form of evidence. (*Estate of McGee,* 168 Cal.App.2d 670, 677 [336 P.2d 622].) ▊▊ Such presumptions "are allowed to stand, not against the facts they represent, but in lieu of proof of them." (*Simonton* v. *Los Angeles Trust & Sav. Bank,* 205 Cal. 252, 258 [270 P.

672].) Though plaintiff argues that "clear and satisfactory" proof is necessary to defeat the presumption, the *quantum* of proof is generally a matter for the trial court and that court's determination of the factual issues is conclusive on appeal unless the evidence upon which the determination is based is so weak and improbable that the finding is without substantial support. (*Estate of McGee,* 168 Cal.App.2d 670, 677 [336 P.2d 622]; *Estate of Ades,* 81 Cal.App.2d 334, 337 [184 P.2d 1].) However, it is also the rule that where the property is shown to have been acquired with commingled funds, the presumption controls only in the absence of other evidence successfully tracing the sources of the commingled property. Therefore, the presumption that property acquired during marriage is community property is controlling only when it is impossible to trace the source of the specific property. (*Thomasset* v. *Thomasset,* 122 Cal.App. 2d 116, 124 [264 P.2d 626]; *Gudelj* v. *Gudelj,* 41 Cal.2d 202, 210 [259 P.2d 656]; *Berry* v. *Berry,* 117 Cal.App.2d 624, 631 [256 P.2d 646]; *Fountain* v. *Maxim,* 210 Cal. 48, 51 [290 P. 576].) The reason for this latter rule is stated in *Faust* v. *Faust,* 91 Cal.App.2d 304 at 309 [204 P.2d 906]: "There is both a community and a separate interest in property purchased with separate and community funds *where each contribution is clearly ascertainable.*" (Emphasis added.)

 The presumption arises upon proof by one party that property was acquired during marriage. The fact, if such be the case, that the property was acquired with commingled funds does not weaken or negative the presumption, nor does such fact require the one claiming the commingled property as community to establish an inextricable commingling. Rather, proof of the acquisition of property during the marriage, whether commingled or not, establishes the presumption which can only be rebutted by evidence tracing the source of the funds used in its acquisition. In *Wilson* v. *Wilson,* 76 Cal.App.2d 119 [172 P.2d 568], it was argued that the wife, who was claiming that a certain house was community property, could not rely on the presumption that the house was community property simply by showing that it was acquired during the marriage; that she was under a duty to show that the funds used in the purchase were acquired after marriage. The court said, at pages 126, 127: "There is no such limitation on the rule—if there were, there would be but little room for the operation of the presumption. Obvi-

ously, if a litigant had to trace the funds used in each purchase to funds acquired after marriage there would be few cases indeed to which the presumption could apply. The true rule is that the burden is on the party asserting the separate character of the property, and that *the presumption applies when the one claiming that the property is community offers evidence that the property was acquired after marriage."* (Emphasis added.) ▉▉ As stated in *Estate of McGee,* 168 Cal.App.2d 670, 677 [336 P.2d 622]: "When separate property is intermingled with community funds, the respective properties or funds remain unchanged in character so long as they can be clearly ascertained. (*Faust* v. *Faust,* 91 Cal.App.2d 304, 309 [204 P.2d 906]); but the presumption in favor of community property (Civ. Code, § 164) applies to commingled property (*Estate of Smith,* 86 Cal.App.2d 456, 473 [195 P.2d 842]) so that the burden of proof rests with the party claiming the property to be separate (*Fountain* v. *Maxim,* 210 Cal. 48, 50-51 [290 P. 576])."

Thus, where it is shown, not only that certain property was acquired during coverture, but that the funds used in its acquisition were commingled separate and community funds, the entire property must be treated as a community asset unless it be clearly shown that it is possible to trace the separate funds. (*Gudelj* v. *Gudelj, supra,* 41 Cal.2d 202, 210 [259 P.2d 656]; *Falk* v. *Falk,* 48 Cal.App.2d 762, 768 [120 P.2d 714]; *Fountain* v. *Maxim, supra,* 210 Cal. 48, 51 [290 P. 576].)

▉ Where, as in the instant case, the only competent, admissible evidence concerning the property in question is unequivocal that *no* tracing of separate sources used in the acquisition of the commingled property is possible, the court *must* apply the presumption and find all the commingled property to be community property. (*Gudelj* v. *Gudelj, supra,* 41 Cal.2d 202, 210 [259 P.2d 656]; *Estate of Adams,* 132 Cal. App.2d 190, 201 [282 P.2d 190].)

Applying the foregoing rules to the record in this case, and granting to the trial court its full prerogative to determine the factual issues and resolve the conflicts based upon the evidence before it and inferences to be drawn therefrom, we must conclude that a presumption that all of the contested property acquired during the marriage was community property arose and was neither rebutted by "clear and convincing" proof of its separate character, nor by any competent evidence whatsoever.

The procedural posture of this case is somewhat unusual.

The complaint alleged, in part: "There is community property of the parties, the exact extent and nature of which is unknown to plaintiff but is known to defendant. Defendant had substantial properties and income therefrom prior to the marriage of the parties, and subsequent to the marriage defendant *through his personal efforts and the use of community income and credit* and *separate estate* has acquired other substantial properties, the exact nature and extent of which is unknown to plaintiff but is known to defendant." (Emphasis added.) Clearly, the complaint alleges the acquisition of property by defendant during the marriage and the commingling of separate and community funds in its acquisition. Defendant's default admits the truthfulness of this allegation. (*Metropolitan Life Ins. Co.* v. *Welch,* 202 Cal. 312, 316 [260 P. 545]; *Christiana* v. *Rose,* 100 Cal.App.2d 46, 50, 51 [222 P.2d 891] and cases therein cited.)

At the trial of the action, plaintiff introduced testimony showing that some 16 notes secured by deeds of trust were purchased by defendant during the marriage. These trust deeds were shown to have a face value of $466,286.90 at the date of separation. Following the introduction of this evidence, the trial court, over plaintiff's objection, ordered plaintiff's witness, Hicks, who was defendant's tax accountant, to prepare net worth statements for defendant as of September 1, 1953, and September 1, 1958. These statements were prepared by Hicks and introduced into evidence on the court's own motion. Hicks testified that he was unable to trace the source of the funds used to purchase the trust deeds acquired during the marriage.

The court then, over plaintiff's objection, appointed "court experts" to conduct an audit of defendant's property at the date of marriage and "as to the date of the separation." This audit was prepared and admitted into evidence over plaintiff's objection that it was hearsay and not the best evidence. The accountants were subsequently examined at great length by both the court and plaintiff's counsel. The report of the "court experts" purports to show that there was no community property at the date of separation. This result was reached by: (1) "tracing" the sources of the trust deed purchases into defendant's separate property; (2) determining the discounts taken by defendant upon the trust deed purchases; (3) establishing the net income accruing to defendant from the trust deeds; and (4) applying the formulae established by the court by its order appointing the accountants; to wit, that defendant must be allowed a 10 per

cent per annum return on all trust deeds held as separate property during the marriage before apportioning any excess to the community. The "court experts" concluded that all trust deeds were acquired with separate funds, and that some $6,000 in excess of 10 per cent per annum was earned by defendant through his investments over the five-year period of the marriage and that this sum was less than the community expenses for the same period.

If the audit submitted by the "court experts" had been admissible evidence, it may well have supported the trial court's conclusions that the presumption that the trust deeds were community property had been rebutted and that there was no community property. However, the report was clearly inadmissible over plaintiff's timely and repeated objections. It was clearly developed by the testimony of the accountants themselves, that the records of the defendant were incomplete and disorganized and that the accountants were forced to rely in large measure on out-of-court statements of escrow and loan officers and others connected with defendant's transactions. Further, it was shown that many basic figures in the reports and much of the information concerning the sources of funds used to purchase the trust deeds were conclusions of the accountants based upon coincidence, inference, inference on inference, and pure conjecture. The "court experts" conducted a trial outside the courtroom, gathering "evidence" and drawing conclusions from that "evidence," all, of course, without benefit of cross-examination by plaintiff's attorneys. This was not an audit falling into the exception established by Code of Civil Procedure, section 1855, subdivision 5, which provides that a summary of records may be admitted where the records themselves are voluminous. The statements submitted by the "court experts" relied only in part on records kept by defendant of his transactions and were based in large measure on out-of-court statements and other inadmissible sources. Nor was the evidence submitted by the accountants admissible as an opinion as to "value." (See *Covina Union High School Dist.* v. *Jobe,* 174 Cal.App.2d 340, 348 [345 P.2d 78]; *McElligott* v. *Freeland,* 139 Cal.App. 143, 158 [33 P.2d 430]; *Hammond Lbr. Co.* v. *County of Los Angeles,* 104 Cal.App. 235, 248 [285 P. 896].) Obviously, the "opinion" expressed by the experts purported to determine much more than value; it necessarily involved a tracing of all defendant's trust deed purchases, including discounts earned and unearned and income accruing from the trust deeds.

Therefore, the general rule that "an expert witness is not permitted to give an opinion which is based upon information gained from the statements of other persons outside the courtroom for the obvious reason that the opinion of the witness thus depends entirely upon purely hearsay declarations" (*McElligott* v. *Freeland,* 139 Cal.App. 143, 157 [33 P.2d 430]), controls in this case. The reports of the "court experts," being inadmissible in their entirety, cannot support the finding that there was no community property.

The Hicks report, prepared at the request of the court, likewise fails to rebut the presumption that the trust deeds acquired during marriage were community property. While it is fair to say that his statements indicate that there was insufficient community income to account for all of the trust deed purchases during the marriage, it is equally clear that by no stretch of the imagination did his statements support the finding that there was no community property. On the other hand, Hicks testified unequivocally that "it would be impossible" to trace the sources of the trust deed purchases. This testimony supports the presumption. (*Estate of Adams,* 132 Cal.App.2d 190, 201 [282 P.2d 190]; *Falk* v. *Falk,* 48 Cal.App.2d 762 [120 P.2d 714].)

The following observation of the court in *Wilson* v. *Wilson,* 76 Cal.App.2d 119, 127 [172 P.2d 568], seems particularly pertinent: "The soundness of the presumption is well illustrated in the present case. The defendant was the one in possession of the true facts relating to his assets and income. He was evasive and tried to conceal the facts relating to these matters. . . . Under such circumstances it would result in a miscarriage of justice to not indulge in the presumption."

As to plaintiff's contention that the trial court erred in purportedly divesting itself of jurisdiction to modify the decree, we must agree that such was error. The authority of the court to modify its decree does not depend on any purported reservation nor, conversely, may the court divest itself of such authority for the authority is conferred by virtue of statute, Civil Code, section 139.

The judgment (designated "order" in notice of appeal) is reversed and a new trial ordered on the issue of community property only.

Ashburn, J., concurred.

A petition for a rehearing was denied November 30, 1960, and respondent's petition for a hearing by the Supreme Court was denied December 28, 1960.