[Civ. No. 3284.   Third Appellate District.—September 28, 1927.]

LOUIS SELIGMAN, Respondent, v. SADIE MARGARET SELIGMAN, Appellant.

Vincent W. Hallinan and Russell & Heid for Appellant.

LeRoy G. Smith for Respondent.

PLUMMER, J.—Plaintiff had judgment in an action to quiet title to certain tracts of land lying and being in the county of Tulare; also to certain city lots in the town of Kingsburg, in the county of Fresno; and to an undivided one-half interest in a certain ten-acre tract in Springfield Colony, in the county of Fresno. From this judgment the defendant appeals.

The lands involved are described as the west half of the southwest quarter of section 8 in township 17 south of range twenty-three east, M. D. B. & M.; the northwest quarter of section 32, in township 17 south, range twenty-six east, M. D. B. & M.; an undivided one-half interest in lot four (4) in block thirty-five, of the city of Visalia; also, lots 9, 10, 23, 24, and 25 in block "C" of the city of Kingsburg, Fresno County; and an undivided interest in the ten-acre tract above mentioned.

All this property was owned by the plaintiff to the extent of his ownership therein at the time of his marriage with the defendant, and had been owned by the plaintiff for a number of years previous to said marriage. Plaintiff also owned an interest in a general merchandise business conducted in the town of Dinuba, in the county of Tulare. The testimony is to the effect that the plaintiff had invested in said merchandise business, at the time of said marriage, the sum of at least $26,000. The marriage of the plaintiff and the defendant took place during the year 1910. Since the marriage of the plaintiff and the defendant the plaintiff has expended considerable sums of money in the improvement of certain portions of the property herein referred to. The testimony is to the effect that the plaintiff expended, during the three years preceding the commencement of this action, the sum of approximately $43,000 on the 160-acre tract herein referred to, and that he had expended the sum of $1,200 on the city lots mentioned for his portion of the costs of macadamizing streets on which said lots abutted. The testimony also shows that since the marriage of the plaintiff and the defendant the plaintiff has expended the sum of $4,000 at least in erecting a building on one of the lots

situate in the town of Visalia. The money for this improvement, however, was borrowed from a building and loan association and was repaid to said association out of the rents, issues, and profits derived from the building erected as aforesaid.

Upon this appeal the appellant contends that the money used by the plaintiff in improving his real property, subsequently to his marriage with the defendant, was community property, and that the money was acquired by reason of the personal character, energy, labor, and industry of the plaintiff in carrying on his business. That the money consisted of such earnings and profits acquired by the plaintiff from his business; that the plaintiff applied these profits and earnings, and expended them as improvements on the lands referred to; that the improvements placed on said real property greatly enhanced its value, and were and are permanent and substantial in their nature. That by reason of these acts the improvements became and are community property, and that the defendant acquired, and now owns a community interest therein. On the part of the respondent it is contended that the improvements were placed on the real property with money that was the separate property of the respondent, and that the appellant has no interest therein. The finding of the trial court is to the effect that all of the property mentioned in plaintiff's complaint was and is the separate property of the plaintiff. The real question to be determined is whether the finding of the court is supported by the testimony. In this particular the plaintiff, upon cross-examination, testified that since his marriage he had made improvements on forty acres of the 160-acre tract referred to, and had expended thereon the sum of about $18,000 in leveling the land, planting the same to vineyard, preparing it for irrigation and installing an irrigation system. That he had paid $1,200 expenses for macadamizing the streets on which the lots in the town of Kingsbury abutted. The plaintiff further testified that during the three years preceding the trial of this action he had expended between $15,000 and $16,000 "for my purposes" (which we interpret as living expenses or household expenses), $43,000 in improvements on the 160-acre tract herein referred to,. and about $10,000 in payment of expenses incurred while the plaintiff was ill. During this period of time the testimony

also shows that the plaintiff withdrew from the capital investment in the merchandise business to which we have referred the sum of $26,000. The testimony further shows that there was associated with the plaintiff in the management and carrying on of the merchandise business in the town of Dinuba, a brother by the name of Emil, and we think the trial court was justified in coming to the conclusion, from the testimony set out in the transcript, that the brother Emil was in fact the manager of the merchandise business referred to, and that the plaintiff only exercised a secondary function in the conduct and management thereof. The record further shows that no salary was ever allotted to, drawn by, or paid from the merchandise business to either the plaintiff or his brother Emil, but that at the end of the year the profits, if any, were divided. The transcript further shows that all the receipts arising from the expenditures incurred upon the real estate by the plaintiff, to which we have referred, were carried into the same general account kept by the bookkeeper of the general merchandising store in which the plaintiff was interested. The record is silent as to whether the profits arising from the real estate belonging to the plaintiff during the period of time that has elapsed since his marriage with the defendant were greater or less than the expenditures made thereon. So far as the record is concerned it is absolutely silent upon the question of receipts from the agricultural lands owned by the plaintiff. The record does show something in relation to the receipts arising from the improvements made upon one of the city lots in Visalia. This improvement consisted of a moving picture theater building and, as we have stated, the mortgage thereon was paid out of the rents, issues and profits of the building. The record is also silent as to the reasonable earning capacity of the plaintiff in connection with the management of the merchandising business referred to, and also silent as to the reasonable value of his services. The appellant apparently bases her argument upon the theory that whatever was received by the plaintiff from his properties constituted community property. The argument of appellant is as follows: "By reason of the foregoing premises we arrive at the following conclusions: That the profits of the business constituted community property, and that respondent improved certain parcels of his real prop-

erty subsequent to his marriage with these earnings. We shall now proceed to show on what parcels of real property the community funds thus derived were expended,'' etc. This, of course, is not a correct statement of the law. The profits of the real estate and of the merchandise business being derived from real estate owned by the plaintiff before his marriage would be separate property, save and except as to that portion thereof which might be attributed to the earning capacity of the ascertained earnings of the plaintiff by reason of his managament, labor thereon or control thereof. Not the profits of the business, but only the earnings of the plaintiff from his individual efforts, or what might be called his salary or wages, would be community property. The testimony of the plaintiff is further to the effect that his living expenses ran in the neighborhood of $5,000 per annum. The argument is made by appellant that this sum is excessive, but so far as we have been able to discover, there is no testimony in the record to the contrary. According to the testimony of Milton Seligman, the book-keeper for the two brothers, who kept all the accounts of the merchandise business conducted by the plaintiff and his brother Emil, and also of the receipts and expenditures of the plaintiff, the profits of the merchandising business ranged all the way from $112 per year for each partner up to $5,000 a year for each partner. That the plaintiff, at the time of his marriage, had invested in the merchandising business the sum of $26,000, and that during the last few years the plaintiff had withdrawn from his capital investment in the merchandising business practically all of his interest therein, and that at the time of the trial the plaintiff's capital investment had been reduced to the sum of about $400. The bookkeeper testified that the sum withdrawn by the plaintiff was about $26,000 and that this sum had been spent in the plaintiff's household expenses, his sickness, and in improving a certain 160 acres, being one of the tracts of land to which we have referred. That there was a sharp decline in the capital investment owned by the plaintiff in the merchandising business during the period of time he was improving the parcel of real estate to which we have referred. The testimony further shows that up to the time the plaintiff took sick he was accustomed to going down to the store and spending several hours there each day

going over the books and otherwise taking an interest in the business. That the plaintiff, at the time of the trial, was between seventy-three and seventy-four years of age. We find in appellant's brief an itemized statement or calculation which would indicate a community interest in the property to which we have referred, in the sum of $120,000. This apparently includes all the improvements and all the enhancements in value of the properties referred to, but the estimate of the value of the lands is clearly beyond and largely in excess of the real value thereof even after making the improvements thereon. The contention of the appellant as to the values is apparently based upon the testimony of the defendant that the plaintiff stated he would not take less than a certain sum for the property. Instead of any of the land being worth $1,000 per acre, even though improved, as argued by appellant, we think the reasonable value thereof is much more nearly approximated by the testimony of the witness Cross, a real estate dealer called on the part of the defendant. His testimony was to the effect that one of the tracts of land called the "Travers Place," including eighty acres, was worth about the sum of $33.50 an acre; that 160-acre tract, twenty acres being in figs, was valued at about $150 an acre; that forty acres of the 160-acre tract, being planted in Malaga grapes, was worth about $450 per acre; and that the remainder of the tract, being fairly level, was of the value of about $150 per acre; that the improved portion or the portion in grapes, as bare land, was worth about $80 per acre; that the ten acres of land in which the defendant owned a half interest, was worth as a whole tract $5,500. This witness also testified that the forty acres of the improved portion of the 160-acre tract referred to was probably worth $300 an acre more than bare land. This witness further testified that he had bought similar land, being land adjoining the quarter-section belonging to Seligman, for $95 an acre and sold the same for between $110 and $120 an acre.

Irrespective of the value of the agricultural land, however, either before or after the improvement thereof, the record shows that at least $26,000 of the capital investment in the commercial business in the city of Dinuba was withdrawn by the plaintiff and invested in improvements referred to. Under such circumstances, no part thereof can be considered as community property. The record is silent

as to whether there was any income from the 245 acres of agricultural land owned by the plaintiff during the period of time elapsing between the marriage of the plaintiff and defendant and the institution of this action. It is likewise silent as to the source from which was obtained the difference between the $43,000 testified to by the plaintiff as expended in improvements on the agricultural lands owned by him and the $26,000 that came out of the capital investment in the store. Thus, there is no basis whatever for an inference that any portion of the money expended in the improvement of the lands and premises owned by the plaintiff prior to his marriage was paid for by community property. It is simply a matter of surmise or guess, and if any inference could be drawn in relation thereto, it was just as reasonable for the trial court to infer that it was paid out of that portion of the profits arising from plaintiff's property, whether agricultural or the mercantile business conducted by him in the city of Dinuba attributable to that portion which would be the plaintiff's separate property as the income properly allowable thereon, as to the portion attributable to his individual exertion. Under section 163 of the Civil Code, all the rents, issues, and profits of the property in question would ordinarily be the separate property of the plaintiff. Likewise, ordinarily, improvements made out of community funds on lands constituting the separate property of one of the spouses follow the character of the land and become separate property. (5 Cal. Jur. 298.) This rule, of course, has its limitations. It cannot be applied where there is an agreement between the spouses to the contrary, nor where creditors establish that the money was put into such improvements for the purpose of defrauding them, nor where the improvements are made by the husband for the purpose of depriving the wife of her interest in the community property. So far as the record shows none of the limitations are applicable to this case. The profits, if any, all came from separate property, and no question of fraudulent intent or purpose is presented to us for determination.

Again, the increase in the value of the real estate does not necessarily show that any community property has been added thereto or that any portion of the increase in the value of the real estate should be considered and divided

between the spouses as community property. So far as the record is concerned the inquiry at the trial was directed solely to the amount of money that was expended in the way of improvements, and nothing further is presented to guide the trial court in determining how the ownership therein should be allocated further than that in some way it came out of the profits to some extent, from the business, and to a considerable extent out of the capital investment. Under such circumstances we do not very well see how the case of *Pereira* v. *Pereira*, 156 Cal. 1 [134 Am. St. Rep. 107, 23 L. R. A. (N. S.) 880, 103 Pac. 488], and others following the same principle, can be considered as applicable. In the Pereira case the court said, referring to the property in question: "This capital was undoubtedly his separate estate. The fund remained in the business after marriage and was used by him in carrying it on. The separate property should have been credited with some amount as profit on this capital. It was not a losing business, but a very profitable one. It is true that it was very clearly shown that the principal part of the large income was due to the personal character, energy, ability and capacity of the husband. This share of the earnings was, of course, community property." Nothing of this kind appears in this case. It is not shown that the principal part of the income was due to the personal character, energy, ability, or capacity of the husband, but it does appear that the principal sum of money invested in the way of improvements upon the agricultural lands referred to came from and was taken out of the capital investment in the commercial enterprise conducted by the plaintiff and his brother in the city of Dinuba. It is also shown by the testimony of the bookkeeper that the money withdrawn by the plaintiff for his household expenses during a considerable portion of the time at least was in excess of the plaintiff's portion of the net income of the merchandise business. As said in *Thompson* v. *Davis*, 172 Cal. 191 [157 Pac. 595], there is no presumption as to the source from which the money came that entered into the improvement of the real estate, as the court cannot presume that use is made of the community property rather than of the separate property, and in this case, just as in the case of *Thompson* v. *Davis*, *supra*, the best that can be said is that the source of the money is left doubtful.

Likewise, as is said in the *Estate of Gold*, 170 Cal. 621 [151 Pac. 12], where a business has been carried on a capital invested therein by a man before his marriage, the entire profits therefrom after marriage are not necessarily separate property of the husband, but a portion thereof is chargeable to his activity, ability, and capacity. And this would be true here if there was any testimony in the case upon which the trial court could say that the improvements made upon the real property was taken out of any portion of the profits of the business carried on by the plaintiff, reasonably classed as community property, and that the moneys withdrawn from the business for household purposes did not reasonably equal the earning capacity of the husband.

Upon the whole case the findings of the trial court appear to be sufficiently supported.

The judgment is affirmed.

Glenn, J., *pro tem.*, and Finch, P. J., concurred.