[Civ. No. 6014. Fourth Dist. May 13, 1959.]

Estate of WILLIAM L. HALE, Deceased. CLARA M. HALE, Appellant, v. JOHN DARROW HALE et al., Respondents.

352

Leonard C. Hall, Jr., for Appellant.

Maddox, Abercrombie, Kloster & Jacobus for Respondents.

SHEPARD, J.—Deceased died on November 25, 1956, and his will was admitted to probate. On the hearing of a petition to determine heirship, the widow Clara Mae Hale, appellant herein, claimed that a bequest to deceased's son John Darrow Hale, and to deceased's sister Katherine B. Hale, the respondents herein, of certain interests in a specifically described parcel of land had been adeemed by sale, and that 64.84 per cent of the value of said parcel was the community property of herself and deceased. Said widow's claim was rejected by the trial court and she has appealed.

The property subject of dispute is approximately 40 acres

described as Lots 31 and 32 (Southeast Quarter of the Southeast Quarter) of Section 11, Township 30 South, Range 27 East, M. D. B. & M. in Kern County, California, and was acquired by deed to deceased November 9, 1912. In 1917, deceased and his then wife borrowed $3,000 on this property from the Federal Land Bank at Berkeley. Deceased married appellant herein December 19, 1931, and the evidence indicates that at that time there remained unpaid on the mortgage to the Federal Land Bank on said loan the sum of $2,402.12.

Paragraphs Fourth and Fifth of deceased's will read as follows:

"FOURTH: I hereby give, devise and bequeath to my sister KATHERINE B. HALE a life estate in and to the North Half of the Southeast Quarter of the Southeast Quarter of Section 11, sometimes described as Lots 31 and 32 in said Section, Township 30 South, Range 27 East, M. D. B. & M.; and I hereby give, devise and bequeath unto my wife CLARA MAE HALE a life estate in and to the South Half of the property last hereinabove described; provided, however, that said life estate hereby given to my said sister shall terminate upon her marriage, and that the life estate hereby given to my wife shall terminate upon her re-marriage after my death.

"FIFTH: I hereby give, devise and bequeath unto my son JOHN DARROW HALE the property described as the Southeast Quarter of the Southeast Quarter of Section 11, Township 30 South, Range 27 East, sometimes known as Lots 31 and 32 in said Section, subject to the life estates hereinabove devised; and I also give, devise and bequeath to my said son said property and each parcel thereof upon the termination of said life estates or either of them on the marriage of my said sister or my said wife."

The respondent sister has never married and appellant has not remarried.

On February 24, 1955, deceased sold said 40 acres for the agreed purchase price of $80,000 (reserving a 50 per cent interest in petroleum and mineral rights), and received back a note and deed of trust thereon. The balance of principal and interest unpaid at deceased's death was in the amount of $71,997.86. Appellant introduced testimony that she had assisted deceased in some of the clerical work on payrolls and weighing of crops produced on this and other property during the married relationship; that improvements in an amount totaling $7,000 or more were put on the property after the married relationship began; that all of the funds

of deceased were handled through a single bank account, the details on which she did not have full information; and that deceased during their married relationship made certain oral statements to her indicating lack of intention by deceased to leave any property to either of respondents. She contends that the improvements were made with community funds and that she has a community interest in this property of 64.84 per cent.

The record before us shows that deceased owned other separate property, and the records of rentals and sales on the whole of deceased's separate property indicate that the income from such sources were more than sufficient to have paid the mortgage to the Federal Land Bank as well as the improvements put on the property in dispute, and that the property in dispute was consistently dealt with by deceased as his separate property. Appellant stated in the affidavit filed for inheritance tax purposes:

"Decedent was a farmer and operated his properties, including the property above referred to as the Wible Road property, from date of marriage to 1946 at which time he retired. During the operational period, he devoted his personal services entirely thereto; and the income therefrom was entirely consummated in the living expenses of decedent and wife, or was consumed by the community."

The evidence further shows that all of the real property acquired by the deceased after marriage was placed in joint tenancy with appellant, which joint tenancy property was appraised by the inheritance tax appraiser in the amount of $22,060, and no claim of ownership is made by the estate to any part of such joint tenancy property. In the later years of his life deceased had occasion to consult on some of these with his attorney, who had drawn the will in question, but made no change in his will. Contrary to some of the implications in appellant's oral testimony deceased, at his own request, was taken to the home of the sister-respondent and there remained during his last illness until his death.

The rules relating to the province of the trial court and of the appellate court are the same in a proceeding of this kind as in any other civil case:

" '. . . all conflicts must be resolved in favor of the respondent, and all legitimate and reasonable inferences indulged in to uphold the verdict if possible. It is an elementary . . . principle of law, that when a verdict is attacked as being unsupported, the power of the appellate court begins

and ends with a determination as to whether there is any *substantial* evidence, contradicted or uncontradicted, which will support the conclusion reached by the jury. When two or more inferences can be reasonably deducted from the facts, the reviewing court is without power to substitute its deductions for those of the trial court.' '' (*Estate of Bristol*, 23 Cal.2d 221, 223 [2] [143 P.2d 689].)

This rule continues to receive recognition in numerous cases and has been directly applied to decisions on whether or not property is separate or community. (*Long* v. *Long*, 88 Cal. App.2d 544, 550 [4] [199 P.2d 47] ; *Estate of Guidotti*, 155 Cal.App.2d 812, 813 [2] [318 P.2d 740].)

■ Appellant's contention that the sale above referred to worked an ademption is without merit. Section 78 of the Probate Code reads as follows:

"Neither a charge or encumbrance placed by a testator upon property previously disposed of by his will, for the purpose of securing the payment of money or the performance of any covenant or agreement, nor a conveyance, settlement, or other act of a testator, by which his interest in any such property is altered, but not wholly divested, is a revocation of the disposal; but the property, subject to such charge or encumbrance, or the remaining interest therein, passes by the will."

■■ In *Estate of Moore*, 135 Cal.App.2d 122, 131, 132 [12] [16] [286 P.2d 939], the court was considering a claimed ademption alleged to have resulted from the sale, after the will was made, of a parcel of devised property with a trust deed back for the balance of the purchase price. The problem was identical with that of the case at bar, and the court said in holding that there was no ademption:

"And a trust deed definitely does represent an interest in the land, for the title is in the trustee for the benefit of the creditor.

. . . . . . . . . . . . . .

"The vendor's interest in the property has been 'altered, but not wholly divested' by a sale with trust deed back."

In *Estate of Trainer*, 161 Cal.App.2d 353 [326 P.2d 520], the court again had before it a devise of a specifically described parcel of real property to one devisee and another described parcel of real property to another devisee. Both parcels were sold, and the testator received in each case a note for the balance secured by a deed of trust. Again the court holds that under the provisions of section 78 of the

Probate Code there was no ademption. The court said, at pages 354, 355:

". . . we are in complete agreement that by virtue of the deed of trust the devisor has a 'remaining interest' in the real property which by the terms of Probate Code, section 78, 'passes by the will.' "

The next contention of appellant is that there is no evidence to support the finding by the court that the community had no interest in said 40 acres in dispute. The numerous documents produced by respondents show quite clearly that ample funds were received through the medium of sale and rentals to have paid for not only the balance on the trust deed to Federal Land Bank, but also all of the improvements. In addition thereto, appellant herself by her own affidavit states that the income was entirely consumed in the living expenses of decedent and wife or was consumed by the community. There is no evidence that the deceased had any substantial outside income from his efforts unconnected with his own separate property. Nowhere did appellant produce evidence that the deceased's earnings exceeded the family living expenses, and no evidence was introduced in any way seeking to apportion any amount as being a fair estimate of deceased's own productive efforts.

"Real property purchased with the separate funds of the husband is his separate property. (Citations.) Likewise the rents, issues and profits therefrom and increase in value thereof are separate property. . . ."

"In regard to earnings, the rule is that where the husband is operating a business which is his separate property, income from such business is allocated to community or separate property in accordance with the extent to which it is allocable to the husband's efforts or his capital investment." (*Huber* v. *Huber*, 27 Cal.2d 784, 791, 792 [8], [9], [11] [167 P.2d 708].)

When, however, the evidence shows that the family expenses equalled or exceeded the amount of money allocable from the husband's personal efforts to community funds ". . . it is presumed that money used in the maintenance of the family is drawn from community funds before there is an encroachment on separate property. [Citations.] Evidence that there was no excess of community income over living expenses has been considered an effective manner of demonstrating the separate character of property remaining." (*Kenney* v. *Kenney*, 128 Cal.App.2d 128, 136 [13], [14a] [274 P.2d 951]; *Estate of Ades*, 81 Cal.App.2d 334, 338 [4], 339

[5] [184 P.2d 1]; *Estate of Guidotti, supra,* 813 [3].) Separate property of a spouse, so held before marriage, presumably continues to be such. (*Holmes* v. *Grange etc. Fire Ins. Assn.,* 102 Cal.App.2d 911, 917 [2] [228 P.2d 889].) There is no presumption that community funds were used to improve separate property. (*Seligman* v. *Seligman,* 85 Cal.App. 683, 690 [4] [259 P. 984].) While there are some exceptions, it is nevertheless true that as a general rule ". . . in the absence of an agreement to the contrary, where improvements are made upon the husband's separate real property with community funds, the improvements have the character of his separate property and belong to the husband." (*Wheeland* v. *Rodgers,* 20 Cal.2d 218, 222 [2] [124 P.2d 816].)

We are satisfied that the evidence was sufficient to support the position of the trial court that the 40 acres under dispute did not become community property, nor did appellant acquire any community interest therein. This conclusion renders unnecessary the discussion of other points raised by respondents and appellant.

The decree appealed from is affirmed.

Griffin, P. J., and Mussell, J., concurred.