[Civ. No. 20090.   First Dist., Div. Three.   Apr. 16, 1963.]

ROBERTA ROSENTHAL, Plaintiff and Respondent, v. JOHN ROSENTHAL, Defendant and Appellant.

Cushing, Cullinan, Hancock & Robert and Vincent J. Cullinan for Defendant and Appellant.

Field, DeGoff, Rieman & Murphy, Martin E. Field and Sidney F. DeGoff for Plaintiff and Respondent.

SALSMAN, J.—This is an appeal from a judgment awarding respondent a divorce, and granting to her $225,000 cash, together with a residence of the value of $60,000 as her share of the community property.

Appellant and respondent were married in 1940. At marriage appellant had $59,538.50 which he inherited from his mother. In 1948 appellant received $283,287.57 by inheritance, and in 1955 he received an additional $98,597.63 in the same manner. The parties separated in 1958. It is undisputed that the only earnings of appellant during marriage consisted of his pay while serving in the Navy during World War II, all of which was used for family living expense. Respondent earned about $500 in salary during the war, and this sum was also spent for general family purposes. After the war, appellant organized a corporation and owned all of its stock. Through the corporation he engaged in the business of purchase and sale of airplanes, but this was without profit, and at time of trial, liabilities of the corporation exceeded its assets, and it owed appellant for advances, the sum of $58,790.48.

Appellant's various inheritances came to him principally in the form of shares of stock in sound, dividend-paying corporations. Some of these stocks he left in an agency account with a Chicago bank, which managed the account for him. However, appellant transferred more than $200,000 of his securities into a margin account at a stock brokerage firm, and there engaged in the purchase and sale of securities on margin, in the pursuit of capital gains. Many transactions were recorded in the margin account, some profitable and in others he sustained losses. At the time respondent filed her

action, there were securities in the margin account worth $824,677.38, against which there was a debt of $160,695.70. The court found that appellant was in the business of buying, selling and speculating in securities; that he had made gains the result of his skill, knowledge and ability; that the gains were not segregated from his separate property; that the capital with which he speculated had been commingled with trading profits and that the community property consisted of the commingled, unsegregated and untraced balance of property after allowing appellant credit for his inheritances. In effect the court found the entire margin account to be community property, except for those inherited stocks which had been placed in the account and never traded. On these findings the court made the award of community property to respondent which presents the principal issue on this appeal.

The respondent bases her claim to community property on three grounds: first, that much of the property here involved was acquired after marriage, and the presumption of Civil Code section 164 is controlling; second, that appellant engaged in the business of investing and speculating in stocks, and made profits which were commingled with his separate property which he cannot now identify, and the whole therefore is community property; third, that appellant's separate property was converted to community property by agreement.

■ The presumption established by Civil Code section 164 is not controlling here. It is not denied that the original source of all property here involved is the inherited property of the appellant. Neither party had any earnings of any consequence during the marriage, and what little money was earned was spent for community living expenses. ■ The presumption that property acquired during marriage is community property is controlling only when it is impossible to trace the source of the specific property. (*Estate of McGee*, 168 Cal.App.2d 670, 677 [336 P.2d 622]; *Gudelj* v. *Gudelj*, 41 Cal.2d 202, 210 [259 P.2d 656]; *Mason* v. *Mason*, 186 Cal. App.2d 209, 212 [8 Cal.Rptr. 784]; *Estate of Ney*, 212 Cal. App.2d 891, 897 [28 Cal.Rptr. 442].) ■ The applicable statute here is Civil Code section 163, which defines the husband's separate property: "All property owned by the husband before marriage, and that acquired afterwards by gift, bequest, devise, or descent, with the rents, issues, and profits thereof, is his separate property." The increase in value of the husband's inheritances here is equivalent to the "rents,

issues and profits'' referred to in Civil Code section 163. This does not mean, however, that the community estate is to be left without recourse.

█ It is the rule that where, as here, separate property is used to produce income and profits, there must be an apportionment of the gains between the separate and community estates. (*Estate of Neilson,* 57 Cal.2d 733, 740 [22 Cal.Rptr. 1, 371 P.2d 745]; *Witaschek* v. *Witaschek,* 56 Cal.App.2d 277, 281 [132 P.2d 600].) █ At least two methods of apportionment have been suggested and commonly recognized by the courts. In *Pereira* v. *Pereira,* 156 Cal. 1 [103 P. 488, 134 Am. St.Rep. 107, 23 L.R.A. N.S. 880], the usual rate of interest on a long term investment well secured was credited to the separate property, and the excess allowed to the community; in other cases income and profits have been apportioned between separate and community property in accordance with the extent to which such income and profits were allocable to the husband's efforts or his separate property investment. (*Huber* v. *Huber,* 27 Cal.2d 784, 792 [167 P.2d 708]; *Estate of Hale,* 170 Cal.App.2d 351, 357 [338 P.2d 997]; *Witaschek* v. *Witaschek, supra,* 56 Cal.App.2d 277, 280.) No arbitrary rule has been established. If the facts justify it, a larger rate of return may be allowed than that applied in *Pereira* v. *Pereira, supra,* 156 Cal. 1. (See *Gilmore* v. *Gilmore,* 45 Cal.2d 142, 150 [287 P.2d 769]; *Tassi* v. *Tassi,* 160 Cal.App.2d 680, 691 [325 P.2d 872].)

Here the trial court did not purport to allow any interest return to appellant on his separate property used in the margin account, and the court did not fix any value on the appellant's time, skill and knowledge devoted to the enhancement of his separate property, although there is evidence in the record relating to the value of appellant's time and services, and from which such a finding could have been made. What the court did was to assign all of appellant's separate property traded in the margin account, together with all of the profits and the increase thereof to the community. In *Strohm* v. *Strohm,* 182 Cal.App.2d 53 [5 Cal.Rptr. 884], the court said at page 62: ''The time, efforts, and skill of the husband are assets of the community and when they are used for the enrichment of the separate property of the husband, the community must be compensated. . . . If there is evidence of enrichment of separate property, the probable contributions of the community and of the capital investment of the husband must be determined from all the circumstances of

the case. This requires findings of fact." Thus, in this case, if the interest formula is not applied there must be a finding as to the value of the time, talent and effort of appellant in the management of his margin account and in the investment of his separate capital, and when such a finding is made the community will be entitled to credit for the value so determined. ■ Since it is admitted that the source of all the property of the parties is the various inheritances of appellant, and respondent now asserts there is a community character to all, or a portion of the property, and the presumption of Civil Code section 164 cannot be applied, it will be respondent's burden in the first instance to produce the evidence from which the trial court may make a finding as to the value of appellant's services, and the extent to which the community shall receive credit therefor.

Respondent seeks to support the trial court's judgment on the ground there was an oral agreement between the parties that all of appellant's property was to be community property. Her testimony suggested that, over a long period of time they had come to an understanding that "everything is shared" and that "everything was a joint venture, in a way." Also relied upon as indicating a transmutation of appellant's separate estate into community property was the filing of separate income tax returns for the years 1945 and 1946 showing income divided between husband and wife. This evidence was rebutted by appellant's own testimony, and by the fact that when these income tax returns were questioned by the tax authorities, amended returns were filed, so as to show all income as separate income of appellant from his inherited properties. The trial court does not appear to have based its judgment upon the existence of the claimed agreement. In finding VII, with reference to the margin account, the court found "that it was understood and agreed by and between the plaintiff and defendant that the income and gains realized from said business would belong to the community of the plaintiff and defendant." This portion of the finding, as is apparent, relates only to income and gains in the margin account, and makes no reference at all to appellant's separate capital used in the account. Later, in the same finding, the court states: "that the value of the community property of the defendant and the plaintiff is Three Hundred Ten Thousand, Eight Hundred Six and 90/100 Dollars ($310,806.90). That said community property consists of the commingled, unsegregated and untraced balance of property after allow-

ing defendant credit for the total amount of all of his inheritances and all traced and allocable increases thereof, as hereinabove set forth . . . '' Thus it is apparent that the court did not base its finding as to the existence and extent of community property upon any agreement between the parties, but rested its finding and award on the theory that income and profits from the margin account had been commingled with appellant's separate capital and that the whole account had become community property. If the court had found there was an oral agreement between the parties, transmuting separate property into community property, we should be obliged to determine whether there was substantial evidence to support the finding, but there was no such finding, and, because the case is remanded, we shall not discuss the sufficiency of the evidence in the record on this subject.

The court also found the residence to be community property and awarded it to respondent. The funds to purchase the residence were traced directly to appellant's separate property. Title was taken in his name alone. The court does not find there was any special agreement between the parties to transmute this particular asset from separate property to community property. The testimony relating to the claimed understanding about the character of this property was the same as that relating to all of appellant's separate estate, that is, that the residence, and all other property owned by appellant had become community property. Since the court does not find such an agreement to exist, an award of the residence to respondent cannot be sustained.

Appellant attacks the court's finding of extreme cruelty and the award to respondent of an interlocutory decree of divorce. There was evidence that appellant was cold and aloof to respondent, and that he had associated with other women. From our review of the record we conclude there is sufficient substantial evidence to sustain this portion of the judgment.

The trial court awarded respondent $750 per month alimony; $250 per month each for the support of the children; $21,000 attorney's fees, and $4,400 for accountant's fees. Appellant claims these allowances to be excessive and an abuse of discretion. The amount to be allowed for alimony, child support, attorney's fees and other expenses such as accountant's fees, rests in the sound discretion of the trial court. Such orders will not be disturbed on appeal in the

absence of an affirmative showing of an abuse of discretion. (*Howard* v. *Howard*, 128 Cal.App.2d 188, 190 [275 P.2d 93].) (See also *Pope* v. *Pope*, 102 Cal.App.2d 353, 370-371 [227 P.2d 867]; *Dietrich* v. *Dietrich*, 41 Cal.2d 497, 506 [261 P.2d 269].) ▇▇ ▇▇ Appellant is not a pauper, as the record clearly shows. At the time these orders were made, the net value of property on hand, whether community or separate, amounted to approximately one million dollars. The standard of living of the family was in keeping with the financial standing and income of appellant, and the award of alimony and child support is appropriate to the standard previously maintained. As to counsel fees and fees for accountants, while they appear to be liberal, they are not, under the circumstances here present, excessive. There was extensive investigation and preparation for trial, and a considerable examination of appellant's assets and financial condition. The trial itself consumed several days. We have before us a reporter's transcript of nearly 700 pages, together with the clerk's transcript of 128 pages. The record before us shows that the litigation was of great importance to both parties, and that counsel were diligent in the preparation and presentation of the evidence. We find no abuse of discretion in any of the orders to which appellant objects, and no error except for that relating to the existence and extent of community property and the disposition thereof.

In light of our conclusion, appellant's motion to augment the record becomes moot, and is denied. That portion of the interlocutory decree determining the existence and extent of community property and making a division thereof is reversed; in all other respects the judgment is affirmed. Each party shall bear his own costs on appeal.

Draper, P. J., and Devine, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied June 12, 1963. Peters, J., was of the opinion that the petition should be granted.