Filed 1/21/14

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>   Plaintiff and Respondent,<br><br>      v.<br><br>MARCOS ARTURO SANCHEZ,<br><br>   Defendant and Appellant. | G047666<br><br>(Super. Ct. No. 11CF2839)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Steven D. Bromberg, Judge.  Reversed in part, affirmed in part.

John L. Dodd, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Peter Quon, Jr., and Susan Miller, Deputy Attorneys General, for Plaintiff and Respondent.

\*        \*        \*

A jury convicted defendant Marcos Arturo Sanchez of possession of a firearm by a felon (former Pen. Code, § 12021, subd. (a)(1), repealed by Stats. 2010, ch. 711, § 4;[1] all statutory references are to the Penal Code unless otherwise stated), possession of a controlled substance while armed with a loaded firearm (Health & Saf. Code, § 11370.1, subd. (a)), and active participation in a criminal street gang (§ 186.22, subd. (a)). The jury found true a gang enhancement allegation (§ 186.22, subd. (b)(1)) in connection with the first two charges. The trial court bifurcated the trial on the state prison allegation (§ 667.5, subd. (b)). After the jury returned its verdict, defendant admitted he served a prior term in state prison. The court sentenced defendant to seven years in state prison. The sentence consisted of a three-year term on the Health and Safety Code violation, plus a consecutive three-year term on the gang enhancement attached to that count, and a one-year term on the state prison enhancement. The court imposed concurrent terms on the remaining counts and gang enhancement.

Defendant contends the evidence is insufficient to sustain the substantive gang crime and the gang enhancements. We accept the Attorney General's concession that defendant's conviction for active gang participation must be reversed because defendant acted alone in that matter (*People v. Rodriguez* (2012) 55 Cal.4th 1125), and reverse that conviction. We reject defendant's argument that the gang enhancements must also be reversed because he acted alone.

We publish this decision because defendant claims statements allegedly made and placed in STEP notices, field identification cards (FI cards), and a police report and testified to by the gang expert were improperly admitted into evidence for three reasons: the statements are inadmissible hearsay; the evidence was more prejudicial than probative (Evid. Code, § 352); and the evidence violated his right to confront and cross-examine witnesses, given the fact that the statements were made to officers who did not

---

[1] Former section 12021 has been renumbered 29800, subdivision (a)(1) without substantive change. (See Stats. 2010, ch. 711, § 6.)

testify and who had not previously been cross-examined.  We reject each of these arguments.

I

FACTS

Santa Ana Police Officer Adrian Capacete and his partner Officer Vergara[2] were on uniformed patrol in a marked patrol car in the area of the 1800 block of South Cedar Street in Santa Ana on October 16, 2011, at approximately 5:15 p.m.  Capacete knew drugs sales frequently take place in that area.  Capacete saw defendant sitting on an apartment building staircase leading to an upstairs apartment, apartment D.  Defendant's head was shaved and he wore baggy clothes.  Capacete made eye contact with defendant and Vergara stopped the patrol car.  Both officers got out of the car to make contact with defendant.

Defendant reached into an electrical box against the wall, made a grabbing motion with his left hand, and ran up the stairs, holding his waistband with his right hand.  He ran past a woman holding a baby.  She looked frightened.  Defendant then ran into apartment D.  As the officers ran up the stairs after defendant, the woman told Capacete defendant did not live in apartment D and there were children inside the apartment.

The officers went to the front door of apartment D.  Capacete could see into the apartment through the mesh security door.  He heard children begin to cry.  Capacete saw defendant five to 10 feet in front of a hallway inside the apartment.  With guns drawn, but still outside the security door, Vergara ordered defendant to the ground.

Jesus R., a young boy, was inside the apartment when he heard the door open, saw a man he did not know run to the bathroom, and heard the bathroom door close.  After the man came out of the bathroom, the police entered and had the man on

---

[2] Apparently Officer Vergara's first name was not mentioned at trial.

3

the ground.  Jesus's mother heard a loud noise, exited her bedroom, and saw Vergara pointing his gun at the intruder she had never seen before.

The officers searched defendant and the apartment, but did not find any drugs or firearms.  However, upon looking out the open bathroom window, Capacete saw a gun and a plastic baggie on top of a blue tarp six to eight feet below the window.  There was debris on the tarp, but none on top of the gun or the plastic baggie.

Baudencio Castillo lived below apartment D.  The blue tarp covered his patio.  He has never possessed a gun and he did not give anyone permission to place any items on his tarp.  Castillo gave police permission to retrieve items from the tarp.  He said he has seen defendant in the neighborhood.

The plastic baggie retrieved by police contained 14 plastic bindles and four smaller Ziploc baggies.  The bindles contained useable amounts of heroin and the Ziploc baggies contained useable amounts of methamphetamine.  Capacete said the drugs were packaged for sale.  The gun was loaded, cocked, and ready to be fired.


*Gang Evidence*

David Stow is a gang detective with the Santa Ana Police Department and has testified as a gang expert over 200 times.  He is familiar with the Delhi gang and has spoken with hundreds of Delhi gang members over the years.  The 1800 block of South Cedar is within the territory claimed by Delhi.  As of the date of the charged incident, Delhi had more than 50 members.  The gang's primary activities include drug sales and illegal possession of weapons.  According to Stow, Delhi is a criminal street gang.

Stow discussed certain convictions by documented Dehli gang members.  Jose Ochoa was convicted for possessing cocaine, methamphetamine, and marijuana for sale in 2010.  Ochoa admitted he was participating in Dehli at the time he committed the offenses.  Yvonne Rodriguez was convicted of possessing methamphetamine for sale and for actively participating in a criminal street gang—Delhi—in 2010.  Stow said Ochoa

4

and Rodriguez were Delhi gang members when they committed their respective offenses, and their convictions for possessing drugs for sale were examples of the primary activities of Delhi. Stow added that gangs control the sale of narcotics within their territory.

Stow said he is familiar with defendant and has reviewed his gang background. In June 2011, police served defendant with a STEP notice informing him that Delhi is a criminal street gang. A STEP notice is a two-part form. It notifies the individual that a particular group is a criminal street gang and that the gang has pattern of criminal activity. At the time he received the STEP notice, defendant said he has "kicked it" with guys from Delhi for four years and has been arrested with Delhi members before. Stow said "kicked it" means defendant hangs out with and associates with Delhi gang members.

In August 2007, defendant was standing next to his cousin Jesus Rodriguez in territory claimed by Delhi, when Rodriguez was shot. Defendant admitted on that occasion Rodriguez "hung out" with Delhi gang members. In December 2007, defendant was contacted by police in the 1800 block of South Cedar. He and Mike Salinas, a longtime Delhi gang member, were riding bicycles when a car drove by and Salinas was shot. Salinas identified the shooter as a member of the Alley Boys criminal street gang, a rival of Delhi's.

In December 2009, police again contacted defendant in Delhi territory. This time he was with John Gomez, a known member of Delhi. A few days later, he was contacted in an attached garage in the same block. Defendant was with Fabian Ramirez, another known Delhi gang member, and police found a surveillance camera, Ziploc baggies, narcotics, and a firearm. Based on Stow's investigations of the Delhi criminal street gang, the events of October 16, 2011, and defendant's gang background, Stow opined defendant was an active Delhi gang member and participant.

The prosecutor asked Stow a hypothetical question closely tracking the facts surrounding defendant's arrest. Stow concluded defendant's acts benefitted Delhi because possession of firearms and drug sales are the gang's primary activities, and defendant was willing to risk jail by possessing the drugs and firearm. Stow added that defendant's act of running into a stranger's apartment instills fear in the occupants who are aware Delhi gang members live in the neighborhood. Defendant's action promotes and assists the gang in terms of instilling fear and intimidation. Stow said defendant's possession of a loaded firearm benefits the gang's reputation, while instilling fear based upon that possession.

*Stipulations*

The parties stipulated defendant was a convicted felon as of the date of the charged offenses. They further stipulated defendant "had personal knowledge of the nature and character of heroin and methamphetamine as controlled substances."

*Defense Case*

A cousin of defendant's, Vicki Ramirez, testified she spoke with defendant 15 minutes before his arrest and saw defendant near the staircase, talking on his cell phone. He had his phone in his left hand. She did not see defendant with a gun or drugs. Ramirez said defendant's uncle lives in the building in apartment A. She did not see the police approach defendant or defendant run up the stairs. She did see defendant descend the stairs with the police. She said defendant had a job at the time he was arrested.

Lacy Aguilera said she was with defendant in her apartment, apartment A, prior to his arrest. Aguilera said there are three apartments on the first floor, and one apartment on the second floor. Defendant visited Aguilera at her apartment almost daily. She saw him for about three hours that day and observed no drugs or guns. Defendant was arrested within five minutes of leaving her apartment.

6

II

DISCUSSION

A. *Sufficiency of the Evidence*

Defendant contends the evidence does not support his conviction for active participation in a criminal street gang (§ 186.22, subd. (a)), or the true finding on the gang enhancements (§ 186.22, subd. (b)(1)) because he acted alone in this matter.

1. *Standard of Review*

"'In assessing the sufficiency of the evidence, we review the entire record in the light most favorable to the judgment to determine whether it discloses evidence that is reasonable, credible, and of solid value such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' [Citation.]" (*People v. Steele* (2002) 27 Cal.4th 1230, 1249.) We must accept all assessments of credibility made by the trier of fact and determine if substantial evidence exists to support each element of the offense. (See *People v. Carpenter* (1997) 15 Cal.4th 312, 387.) We presume in support of the judgment the existence of every fact that could reasonably be deduced from the evidence. (*People v. Kraft* (2000) 23 Cal.4th 978, 1053.) We may reverse for lack of substantial evidence only if "'upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction].' [Citation.]" (*People v. Bolin* (1998) 18 Cal.4th 297, 331.) In making this inquiry, it is important to note we do not ask ourselves whether *we* believe the evidence established guilt beyond a reasonable doubt. (*Jackson v. Virginia* (1979) 443 U.S. 307, 318-319.) "Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. [Citation.]" (*Id*. at p. 319.) "The standard of review is the same when the prosecution relies mainly on circumstantial evidence. [Citation.]" (*People v. Valdez* (2004) 32 Cal.4th 73, 104.)

7

2.  *Active Gang Participation*

Defendant was convicted for actively participating in a criminal street gang. (§ 186.22, subd. (a).)  The Attorney General concedes defendant could not be convicted of this offense given the fact he acted alone.  (*People v. Rodriguez, supra*, 55 Cal.4th 1125.)  In *Rodriguez*, our Supreme Court concluded subdivision (a) of section 186.22 requires proof the defendant promoted, furthered, or assisted felonious conduct by *members* of the gang, and that this element is not met when a defendant acts alone in committing a felony.  (*People v. Rodriguez, supra*, 55 Cal.4th at pp. 1131-1132.)  Because the evidence demonstrated defendant acted alone in this instance, the evidence does not support his conviction for violating section 186.22, subdivision (a).  We therefore reverse his conviction on count three of the information.

3.  *The Gang Enhancement*

The jury also found true the gang enhancements alleged in connection with defendant's convictions for felon in possession of a firearm (former § 12021, subd. (a)(1); count one) and possession of a controlled substance with a firearm (Health & Saf. Code, § 11370.1, subd. (a); count two).  Section 186.22, subdivision (b)(1) provides an enhancement for "any person who is convicted of a felony committed for the benefit of, at the direction of, or in association with any criminal street gang, with the specific intent to promote, further, or assist in any criminal conduct by gang members."  Defendant asserts that just as he cannot be convicted of actively participating in a criminal street gang when he acted alone, neither is he subject to a gang enhancement under subdivision (b)(1) of section 186.22.  He further contends the evidence is insufficient to support the gang enhancement because the gang expert's testimony was not substantial.  We address these contentions in turn.

8

### a. *Defendant Acting Alone*

In *People v. Rodriguez*, *supra*, 55 Cal.4th 1125, our Supreme Court held a defendant could be convicted of actively participating in a criminal street gang under subdivision (a) of section 186.22, only if, in addition to meeting the other elements of the offense the defendant did "an act that 'promotes, furthers, or assists in any felonious criminal conduct by members of that gang.' [Citation.]" (*People v. Rodriguez*, *supra*, 55 Cal.4th at pp. 1130-1131 (lead opn. of Corrigan, J.).) The court explained "it is significant that the offense requires a defendant to promote, further, or assist *members* of the gang." (*Id*. at p. 1131.) As *members* is a plural noun, the court concluded one cannot be convicted of actively participating in a criminal street gang unless the defendant advanced, encouraged, contributed to, or helped "*members* of his gang commit felonious criminal conduct." (*Id*. at p. 1132.) The court stated its holding as follows: "The plain meaning of section 186.22[, subdivision] (a) requires that felonious criminal conduct be committed by at least two gang members, one of whom can include the defendant if he is a gang member. [Citation.]" (*Ibid*.) The court found "[t]he Legislature thus sought to avoid punishing mere gang membership in section 186.22[, subdivision] (a) by requiring that a person commit an underlying felony with at least one other gang member." (*Id*. at p. 1134.)

Defendant contends the same reasoning compels the conclusion that a gang member acting alone is not subject to a section 186.22 enhancement because in such a case the defendant has not promoted, furthered, or assisted "in any criminal conduct by gang *members*." (Italics added; see § 186.22, subd. (b)(1).) However, in *Rodriguez*, Justice Corrigan, the author of the lead opinion, distinguished between an individual acting alone in the context of the substantive gang crime under section 186.22, subdivision (a), and one acting alone in the context of the gang enhancement under subdivision (b)(1) of section 186.22. A gang member who commits a felony by himself

9

"would not be protected from having that felony enhanced by section 186.22[, subdivision] (b)(1) . . . ."  (*People v. Rodriguez, supra*, 55 Cal.4th at p. 1138.)

Additionally, in his concurring opinion, Justice Baxter gave his reasons for agreeing "with Justice Corrigan that the gang offense in section 186.22[, subdivision] (a), unlike the gang enhancement in section 186.22[, subdivision] (b)(1), does not extend to defendants who commit the requisite criminal conduct on their own."  (*People v. Rodriguez, supra*, 55 Cal.4th at p. 1141 (conc. opn. of Baxter J.).)  Justice Baxter distinguished between the two subdivisions:  "I recognize, of course, that a seemingly similar reference to gang 'members' appears in *both* section 186.22[, subdivision] (a) *and* section 186.22[, subdivision] (b)(1).  However, small but significant differences in grammar and context make clear that the enhancement provision lacks the same multiple-actor condition as the gang offense."  (*Id*. at p. 1140 (conc. opn. of Baxter, J.).)  Justice Baxter explained, "First, section 186.22[, subdivision] (b)(1), unlike section 186.22[, subdivision] (a), applies where the defendant, even if acting alone, 'specific[ally] inten[ds]' by his felonious action to promote, further, or assist in any criminal conduct by gang members.  Section 186.22[, subdivision] (b)(1)'s reference to promoting, furthering, or assisting gang members thus merely describes a culpable *mental state*.  By contrast, the gravamen of section 186.22[, subdivision] (a) is that the defendant's own criminal *conduct* must itself directly promote, further, or assist felonious criminal conduct by members of the gang.  Thus, section 186.22[, subdivision] (a) implies joint criminal *action* with other gang members—an implication that does not necessarily arise in section 186.22[, subdivision] (b)(1).  This difference suggests we need not construe gang 'members' in each provision the same way.

"The relevant two subdivisions also treat criminal conduct by gang 'members' differently.  As noted, section 186.22[, subdivision] (a) plainly requires felonious criminal conduct committed in tandem by at least two gang members, one of whom may be the defendant.  In contrast, nothing in section 186.22[, subdivision] (b)(1)

10

states or implies that the criminal conduct by gang members which the defendant intends to promote, further, or assist *is the same criminal conduct* underlying the felony conviction subject to enhancement. For this reason too, the direct and specific link between criminal conduct committed by the defendant and that committed by other gang members set forth in the gang offense (§ 186.22[, subd.] (a)) is not present in the gang enhancement (§ 186.22[, subd.] (b)(1))." (*People v. Rodriguez*, *supra*, 55 Cal.4th at pp. 1140-1141 (conc. opn. of Baxter, J.).)

Thus, a majority of the Supreme Court has concluded that although the crime set forth in subdivision (a) of section 186.22 requires more than a lone actor, the gang enhancement provided in section 186.22, subdivision (b) does not. Given the three dissenting justices in *People v. Rodriguez*, *supra*, 55 Cal.4th at pages 1141, 1147 (dis. opn. of Kennard, J.) are of the opinion subdivision (a) of section 186.22 applies to an individual who commits a felony by himself, it appears all members of the court would agree the enhancement provision does not require the underlying felony be committed by more than one individual. Accordingly, we conclude an individual who acts alone in committing a gang-related crime with the specific intent to promote, further, or assist criminal conduct by gang members, is subject to the gang enhancement provided in section 186.22, subdivision (b)(1).

b. *The Gang Expert's Testimony*

Defendant also contends the gang expert's testimony does not constitute substantial evidence and, as a result, the gang enhancement is not supported by sufficient evidence. Although expert testimony is not deemed substantial evidence if it is based on facts not otherwise proved, or assumes facts contrary to those shown by the evidence (*Toscano v. Greene Music* (2004) 124 Cal.App.4th 685, 696), the opinion offered in this matter was based on facts supported by the evidence and reasonably supporting the officer's conclusion.

11

In support of his argument, defendant cites *In re Frank S.* (2006) 141 Cal.App.4th 1192. In *Frank S.*, the minor was stopped for a traffic violation and found to have a weapon and methamphetamine on his person. He told police he had the weapon for protection from "'the Southerners'" who believe he supports northern gangs. (*Id.* at p. 1195.) The prosecution's gang expert testified the minor was an active member of a criminal street gang and that his possession of the weapon benefitted his gang because the minor could use the weapon to protect himself and other members of the gang. (*Id*. at pp. 1195-1196.) In finding the gang enhancement was not supported by substantial evidence, the court stated: "In the present case, the expert simply informed the judge of her belief of the minor's intent with possession of the knife, an issue reserved to the trier of fact. She stated the knife benefits the Nortenos since 'it helps provide them protection should they be assaulted by rival gang members.' However, unlike in other cases, the prosecution presented no evidence other than the expert's opinion regarding gangs in general and the expert's improper opinion on the ultimate issue to establish that possession of the weapon was 'committed for the benefit of, at the direction of, or in association with any criminal street gang . . . .' (§ 186.22, subd. (b)(1).) The prosecution did not present any evidence that the minor was in gang territory, had gang members with him, or had any reason to expect to use the knife in a gang-related offense. In fact, the only other evidence was the minor's statement to the arresting officer that he had been jumped two days prior and needed the knife for protection. To allow the expert to state the minor's specific intent for the knife without any other substantial evidence opens the door for prosecutors to enhance many felonies as gang-related and extends the purpose of the statute beyond what the Legislature intended." (*In re Frank S.*, *supra*, 141 Cal.App.4th at p. 1199.)

Here, on the other hand, the gang expert's opinion was supported by facts admitted into evidence. Delhi's primary activities are unlawful possession of firearms and drug sales. Although not every crime committed by a gang member is gang related

(*People v. Albillar* (2010) 51 Cal.4th 47, 60), defendant's crimes involved *both* of the gang's primary activities. And while defendant was charged with possessing drugs while armed with a firearm (Health & Saf. Code, § 11370.1, subd. (a)), and not with possessing drugs for sale, the evidence supports a conclusion the drugs were possessed for that purpose; defendant had 14 separate bindles of heroin and four separate Ziploc baggies of methamphetamine. This was important because Stow testified defendant had a very close association with Delhi, Delhi controls the distribution of drugs within its territory, and anyone who sells drugs within Delhi's territory is required to pay a portion of his profits to the gang. Stow's opinion, including the fact that one selling drugs in Delhi's territory is putting in work for the gang, was not based on speculative inferences. Rather it was based on evidence reasonably supporting the inferences he drew from the evidence. Thus, the record in this matter provides evidentiary support, "other than merely the defendant's record of prior offenses and past gang activities or personal affiliations, for a finding that the *crime* was [gang related]." (*People v. Martinez* (2004) 116 Cal.App.4th 753, 762.)

Based on the evidence presented, including the gang expert's opinion, a rational trier of fact could have concluded beyond a reasonable doubt that defendant committed his offenses for the benefit of Delhi, a criminal street gang. (*People v. Maury* (2003) 30 Cal.4th 342, 403.) We therefore reject defendant's contention that the expert's testimony did not constitute substantial evidence supporting the jury's finding on the gang allegation.

Additionally, the gang defendant associates with controls the sale of drugs in its territory and the fact that the drug seller shares his profits with the gang supports a reasonable inference defendant's crimes, committed in Delhi's claimed territory, were gang related. In such a situation, it was not unreasonable for the jury to conclude defendant's crimes were not solely intended to benefit him personally. Consequently, we

13

find the evidence supports the jury finding defendant committed the gang-related crimes with the specific intent to benefit Delhi, a criminal street gang.

B. *STEP Notices, FI Cards, Reports*

Defendant contends the trial court erred in admitting evidence of statements contained in STEP notices, FI cards and police reports. He argues the statements should have been excluded because they were hearsay, denied him his Sixth Amendment right of confrontation, and were more prejudicial than probative (Evid. Code, § 352). "The trial court has broad discretion in deciding whether to admit or exclude expert testimony [citation], and its decision as to whether expert testimony meets the standard for admissibility is subject to review for abuse of discretion." (*People v. McDowell* (2012) 54 Cal.4th 395, 426.) This broad discretion applies as well when the issue is whether evidence is substantially more prejudicial than probative under Evidence Code section 352. (*People v. Nunez and Satele* (2013) 57 Cal.4th 1, 31.) Thus, we generally review the trial court's evidentiary rulings for an abuse of discretion. However, when the issue is whether admission of evidence violated the federal Constitution—in this case, whether admission violated the confrontation clause—we review the matter de novo. (*People v. Mayo* (2006) 140 Cal.App.4th 535, 553.)

1. *Hearsay*

Defendant contends the FI cards, STEP notice and police reports considered by the gang expert contained hearsay that should have been excluded. His claim is precluded by the Supreme Court's decision in *People v. Gardeley* (1996) 14 Cal.4th 605. Accordingly, we find the trial court did not err in overruling defendant's hearsay objection.

"So long as this threshold requirement of reliability is satisfied, even matter that is ordinarily *inadmissible* can form the proper basis for an expert's opinion

14

testimony.  (*In re Fields* (1990) 51 Cal.3d 1063, 1070 [expert witness can base 'opinion on reliable hearsay, including out-of-court declarations of other persons']; see Fed. Rules Evid., rule 703, 28 U.S.C.; 2 McCormick on Evidence, *supra*, § 324.3, pp. 372-373.) And because Evidence Code section 802 allows an expert witness to 'state on direct examination the reasons for his opinion and the matter . . . upon which it is based,' an expert witness whose opinion is based on such inadmissible matter can, when testifying, describe the material that forms the basis of the opinion.  (*People v. Shattuck* (1895) 109 Cal. 673, 678 [medical expert could testify to patient's complaints in order 'to give a clinical history of the case to understand the significance of her symptoms']; *McElligott v. Freeland* (1934) 139 Cal.App. 143, 157-158 [certified public accountant could testify to information he relied on in property valuation]; see *People v. Wash* (1993) 6 Cal.4th 215, 251 [prosecution could elicit out-of-court statements relied on by the defense expert]; 2 McCormick on Evidence, *supra*, § 324.3, p. 372 [explaining that under rule 703, Fed. Rules Evid., which allows the expert to disclose to the trier of fact the basis for expert opinion, '[t]he result is that often the expert may testify to evidence even though it is inadmissible under the hearsay rule.'].)"  (*People v. Gardeley*, *supra*, 14 Cal.4th at pp. 618-619.)

Evidence Code section 801, subdivision (b) authorizes an expert to render an opinion "[b]ased on matter . . . perceived by or personally known to the witness or made known to [the witness] at or before the hearing, whether or not admissible, that is of a type that reasonably may be relied upon by an expert in forming an opinion upon the subject to which [the expert] testimony relates . . . ."  In *People v. Gardeley*, *supra*, 14 Cal.4th at page 618, the court held a gang expert's opinion may be based on reliable, but otherwise inadmissible material if it is of the type reasonably relied upon by experts in the particular field.  The material considered in this matter is of the type reasonably relied upon by gang experts (see, e.g. *id*. at p. 620 [gang expert relied on conversations with other gang members]; *People v. Montiel* (1993) 5 Cal.4th 877, 920-921 [doctor relied on

15

statements of a codefendant]; and *People v. Gamez* (1991) 235 Cal.App.3d 957, 967 [gang expert relied on statements from other police officers], disapproved on another ground in *People v. Gardeley*, *supra*, 14 Cal.4th at p. 624, fn. 10.)

### 2. *Evidence Code section 352*

Evidence Code section 352 gives trial courts discretion to "exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." The prejudice referred to in Evidence Code section 352 is not the prejudice to a defendant that naturally flows from probative evidence tending to demonstrate guilt of a charged offense, but rather the prejudice resulting from "'evidence which uniquely tends to evoke an emotional bias against the defendant as an individual and which has very little effect on the issues. In applying section 352, "prejudicial" is not synonymous with "damaging."' [Citation.]" (*People v. Karis* (1988) 46 Cal.3d 612, 638.) Defendant argues statements attributed to him to the effect that he "kicked it" with members of Delhi, was arrested with a gun in the presence of Delhi members, and statements concerning his presence on a number of occasions with Delhi gang members, including once when police located narcotics, Ziploc baggies and a surveillance camera were unduly prejudicial.

"California courts have long recognized the potentially prejudicial effect of gang membership. . . . 'The word gang . . . connotes opprobrious implications [and] takes on a sinister meaning when it is associated with activities.' [Citation.] Given its highly inflammatory impact, the California Supreme Court has condemned the introduction of such evidence if it is only *tangentially* relevant to the charged offenses. [Citation.]" (*People v. Albarran* (2007) 149 Cal.App.4th 214, 223.)

When defendant was served with a STEP notice, he made a statement to the effect that he "kicked it" with Delhi, and the information gleaned from either police

16

reports or FI cards regarding the 2007 and 2009 incidents when he was in the company of Delhi members who were shot, the 2009 incident when defendant was contacted by police with another Delhi gang member, as well as the incident in 2009 when defendant was contacted with other Delhi gang members in a garage where narcotics, Ziploc baggies, a firearm, and a surveillance camera were found were probative of defendant's involvement with the gang. The evidence was admitted as a basis for the gang expert's opinion that defendant was an active gang participant and that the charged drug and gun offenses were committed for the benefit of his gang.

Counsel's argument that the evidence was "so prejudicial" *because* the statements were made to officers other than the gang expert is unconvincing. We fail to see how hearsay statements that would not be considered unduly prejudicial if made to the gang expert, become so merely because they were made to nontestifying officers. As the evidence was probative of defendant's close ties to the Delhi criminal street gang and not unduly prejudicial, we cannot conclude the trial court abused its discretion in admitting the evidence over defendant's Evidence Code section 352 objection. (*People v. Ramos* (1997) 15 Cal.4th 1133, 1170 [appellate court will not disturb trial court's exercise of discretion under Evidence Code section 352 unless reliance clearly outweighed by prejudicial effect].)

### 3. *Sixth Amendment Confrontation Clause*

Defendant also contends admission of statements allegedly made during these encounters with the police violated his Sixth Amendment right to confrontation because the statements were introduced through the gang expert although the statements were purportedly made to police officers who did not testify and were not subject to earlier cross-examination. The Sixth Amendment guarantees a criminal defendant the right "to be confronted with the witnesses against him." (U.S. Const., 6th Amend.) In *Crawford v. Washington* (2004) 541 U.S. 36, the Supreme Court held the confrontation

17

clause bars "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." (*Id*. at pp. 53-54.)

The *Crawford* court did not delineate the limits of what constitutes testimonial hearsay. "We leave for another day any effort to spell out a comprehensive definition of 'testimonial.' Whatever else the term covers, it applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations. These are the modern practices with closest kinship to the abuses at which the Confrontation Clause was directed." (*Crawford v. Washington*, *supra*, 541 U.S. at p. 68, fn. omitted.) The court used "the term 'interrogation' in its colloquial, rather than any technical legal, sense," and included statements made "in response to structured police questioning." (*Id*. at p. 53, fn. 4.) Although the high court has still not spelled out a comprehensive definition of *testimonial*, in *Davis v. Washington* (2006) 547 U.S. 813, 821, the court clarified that only "'testimonial statements'" implicate a defendant's Sixth Amendment right of confrontation. Even then, the confrontation clause "does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted. [Citation.]" (*Crawford v. Washington*, *supra*, 541 U.S. at p. 60, fn. 9.) Statements made to law enforcement officials in response to questioning "are not testimonial if given and taken for nonevidentiary purposes such as the need to cope with ongoing emergencies. [Citation.]" (*People v Cage* (2007) 40 Cal.4th 965, 987.)

The United States Supreme Court has not said whether the Sixth Amendment confrontation clause is violated when a gang expert bases his or her opinion on statements by witnesses who are not present at trial and who the defendant has not had the opportunity to cross-examine. However, prior to the decision in *Crawford v. Washington*, *supra*, 541 U.S. 336, the California Supreme Court held hearsay statements testified to by a gang expert as a basis for his or her expert opinion are not offered for the truth of the matter asserted. (*People v. Gardeley*, *supra*, 14 Cal.4th at p. 619.) That

18

conclusion is binding on us. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.) Thus, even if the statements are deemed to be testimonial, the confrontation clause would not bar their admission given they were not offered for their truth. (*Crawford v. Washington*, *supra*, 541 U.S. at p. 60, fn. 9; see also *People v. Sisneros* (2009) 174 Cal.App.4th 142, 153-154 [confrontation clause applies to testimonial statements offered for their truth, not statements relied on by expert in forming opinion]; *People v. Ramirez* (2007) 153 Cal.App.4th 1422, 1427 [*Crawford* did not condemn hearsay used to support expert's opinion]; *People v. Cooper* (2007) 148 Cal.App.4th 731, 747 [*Crawford* applies to substantive use of hearsay evidence, not with evidence admitted for nonhearsay purpose]; *People v. Thomas* (2005) 130 Cal.App.4th 1202, 1210 ["*Crawford* does not undermine the established rule that experts can testify to their opinions on relevant matters, and relate the information and sources upon which they rely in forming those opinions."].) Because the complained of evidence was admitted as a basis for the gang expert's opinion and not for the truth of the statements, the trial court did not err in admitting the evidence over defendant's Sixth Amendment objection.

In *People v. Hill* (2011) 191 Cal.App.4th 1104, the court recognized it was bound by our Supreme Court's opinion in *People v. Gardeley*, *supra*, 14 Cal.4th 605, for the conclusion that hearsay statements testified to by an expert witness as the basis for an opinion are not offered for the truth of the matter, (*People v. Hill*, *supra*, 191 Cal.App.4th at p. 1127), but the *Hill* court disagreed with the Supreme Court's conclusion. (*Ibid*.) It found essential to *Gardeley*'s conclusion was "the implied assumption that the out-of-court statements may help the jury evaluate the expert's opinion without regard to the truth of the statements. Otherwise, the conclusion that the statements should remain free of *Crawford* review because they are not admitted for their truth is nonsensical. But this assumption appears to be incorrect." (*Id*. at pp. 1129-1130.) The court in *Hill* reviewed a New York case, *People v. Goldstein* (2005) 6 N.Y.3d 119, in which the appellate court rejected the reasoning invoked by the *Gardeley* court. (*People v. Hill*, *supra*, 191 Cal.4th

19

at p. 1130.) The *Hill* court agreed with the observation in *Goldstein* that in using the hearsay statement to test the validity of the expert's opinion, the jury must either assume the statement is true or assume it is false, and that in such a case "'[t]he distinction between a statement offered for its truth and a statement offered to shed light on an expert's opinion is not meaningful in [the Sixth Amendment] context.' [Citation.]" (*Ibid*., fn. omitted.)

Were it not for our Supreme Court's precedent to the contrary, the *Hill* court would have adopted *Goldstein*'s reasoning. (*People v. Hill*, *supra*, 191 Cal.App.4th at p. 1131.) Still, the *Hill* court observed that even if the hearsay used as a basis for an expert's opinion had been admitted for the truth of the statement and subject to a confrontation clause challenge, most statements would not be considered testimonial because they were obtained in consensual conversations with gang members and not obtained with an eye to prosecuting any particular crime. (*Id*. at pp. 1135-1136.) The same may be said in the present case.

In 2007, during one of the police contacts, defendant was next to his cousin when his cousin was shot. Defendant told police he grew up in the Delhi territory and his cousin hung out with Delhi gang members. There is no evidence indicating either defendant or his cousin, the victim of a shooting, was in custody at the time the statements were made. Any crime being investigated at the time was the shooting of defendant's cousin, and there is no reason to believe the police suspected defendant or his wounded cousin of committing any crime.

On another occasion in 2007, defendant was with Salinas when Salinas was shot in a drive-by shooting. Salinas told police he was shot by a member of the Alley Boys gang. Even if Salinas's statement qualified as testimonial—it surely would be testimonial if offered in the trial of the person who shot him—it was not testimonial in connection with defendant's trial on an offense alleged to have occurred four years after Salinas's statement. In *Crawford*, the court noted the confrontation clause targeted civil-

20

law abuses and applies to "'witnesses' against the accused." (*Crawford v. Washington*, *supra*, 541 U.S. at p. 51.) Salinas's statement that an Alley Boy gang member shot him was not testimonial as applied to its use in the present case. At the time he made the statement, he could not possibly have anticipated his statement would be used *against defendant* for a crime that would not occur for another four years. (See *id*. at p. 52 [various possible definitions of "testimonial," including "'statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial'"]; *U.S. v. Johnson* (4th Cir. 2009) 587 F.3d 625, 635 [to qualify as a testimonial statement, "'the declarant must have had a reasonable expectation that his statements would be used prosecutorially . . . .'"].)

We recognize defendant claims he was denied the right to confront police officers who wrote down the statements of himself and others, not that he was denied the right to confront those who made the statements. However, if the statements themselves are not shown to be testimonial, we fail to see how *recordation* of such statements is testimonial.

Lastly, we note defendant does not contend the prosecution used the gang expert as a mere conduit to relay to the jury otherwise inadmissible hearsay evidence without applying his expertise in connection with the hearsay statements. (See *U.S. v. Gomez* (9th Cir. 2013) 725 F.3d 1121, 1129 [witness used as "conduit or transmitter" who parrots testimonial hearsay rather than testify as a true expert on some specialized factual situation results in an impermissible end run around *Crawford*]; *U.S. v. Johnson*, *supra*, 587 F.3d at p. 635 [*Crawford* implicated if expert "is used as little more than a conduit or transmitter for testimonial hearsay, rather than as a true expert whose considered opinion sheds light on some specialized factual situation"]; *U.S. v. Lombardozzi* (2d Cir. 2007) 491 F.3d 61, 72 [although expert may rely on inadmissible hearsay in forming opinion, expert "may not simply repeat 'hearsay evidence without applying any expertise whatsoever' because it enables the government to put before the

jury an 'out-of-court declaration of another, not subject to cross-examination . . . for the truth of the matter asserted'"].)

## III

## DISPOSITION

The conviction in count three for violation of section 186.22, subdivision (a) is reversed.  The trial court is directed to amend the abstract of judgment accordingly and to forward a certified copy of the amended abstract of judgment to the Department of Corrections and Rehabilitation.  As so modified, the judgment is affirmed.


                                        MOORE, ACTING P. J.

WE CONCUR:


IKOLA, J.


THOMPSON, J.